# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-00915-SCT

*WILLIAM G. SCOTT a/k/a WILLIAM SCOTT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/2005 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. CHRISTOPHER KLOTZ |
| | JOSHUA AARON TURNER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ELEANOR FAYE PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED - 12/04/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1. William Scott was convicted of capital murder for the slaying of Paula Kay Dinkins during an armed robbery at Cash Depot, where Dinkins worked. Dinkins had been shot in the head. The jury found Scott guilty of capital murder and sentenced Scott to life in prison

without the possibility of parole. Scott appealed on the following grounds: (1) whether the trial judge erred in failing to recuse herself after an ex parte conference with Scott's attorney; (2) whether the trial judge erred in denying Scott's motion to suppress his written confession; (3) whether the trial court erred in denying a motion to dismiss for failure to grant a speedy trial; (4) whether the State's closing argument constituted reversible error; and (5) whether Scott received ineffective assistance of counsel under the Sixth Amendment.

¶2.     The Court of Appeals reversed the jury verdict and remanded the case for a new trial and a new evidentiary hearing and found as follows: The trial judge abused her discretion by failing to recuse herself after an ex parte hearing with Scott's counsel;  the trial court abused its  discretion by admitting Scott's confession into evidence; and the trial court's denial of a motion to dismiss for failure to provide a speedy trial was not supported by sufficient evidence on either side and required a new evidentiary hearing to determine if Scott was prejudiced by the State's failure to provide a speedy trial.

¶3.     Having remanded the case for a new trial and a new evidentiary hearing, the Court of Appeals held it unnecessary to reach the issue of whether the closing argument resulted in reversible error.  Lastly, the Court of Appeals held that Scott's claim of ineffective assistance of counsel would be better brought by motion for post-conviction relief and declined to reach the issue. *Scott v. State*, No. 2005-KA-00915-COA, 2008 Miss. App. LEXIS 171, *9-52 (Miss. Ct. App. Mar. 18, 2008).

¶4.     We disagree.  We reverse the Court of Appeals' decision and hold that the trial court: (1) did not commit manifest error or abuse its discretion when the trial court judge did not recuse herself after an ex parte meeting with Scott's counsel while acting in her role as

2

gatekeeper in a jury trial; (2) did not commit manifest error or abuse its discretion when it denied Scott's motion to suppress his written confession; (3) did not commit manifest error or abuse its discretion when it denied Scott's motion to dismiss for failure to provide him a speedy trial; (4) did not commit manifest error or abuse its discretion in failing to grant a mistrial based on allowing the State's closing argument; and (5) Scott did not receive ineffective assistance of counsel in violation of his Sixth Amendment rights.

¶5.     We reverse and vacate the Court of Appeals' judgment. We affirm and reinstate the jury verdict and the sentence of life imprisonment without parole.

**STATEMENT OF FACTS**

¶6.     On July 9, 2002, while working at the Cash Depot in Jackson, Dinkins was shot in the head during an armed robbery; she was found dead, kneeling in front of an empty safe that previously had contained $2,200. After an investigation which revealed Scott to be a possible suspect, an ex-girlfriend of Scott's told the Jackson Police Department Scott was in Marietta, Georgia. The JPD notified the Marietta police of an outstanding warrant, and the Marietta police took Scott into custody.

¶7.     When the JPD arrived, Scott was given his *Miranda* warnings, and allegedly signed a waiver, which he later denied at trial.[1] Scott confessed to the armed robbery and murder in the presence of two officers, then signed and initialed the typed confession. At trial, Scott, who testified in his own defense, admitted he had signed a confession. Scott admitted he had signed some portions of the confession presented in court, but he alleged that he did not sign

---

[1] *Miranda v. Arizona*, 396 U.S. 868, 90 S. Ct. 140, 24 L. Ed 2d 122 (1969).

3

some of the confession. Both officers who took his confession testified at trial and were subject to cross-examination.

¶8. At the heart of this appeal is an ex parte conference (which was sealed under the court's order) in which Scott's counsel revealed a serious conflict brought about by his client's confession to the murder, insistence on taking the stand to offer perjured testimony, and insistence on attempting to find alibi witnesses who would likewise commit perjury. The record reveals that Scott's counsel tried to reason with Scott to prevent him from providing perjured testimony, to no avail. Scott attempted to have new counsel appointed on several occasions as well.

¶9. At that point, Scott's counsel attempted to withdraw from the case, which the trial court did not allow. Then, Scott's counsel, without initially revealing the content of the conflict, explained to the judge in an ex parte hearing that he found himself in an ethical dilemma that could cost him his license to practice law. The trial judge inquired further in order to make her ruling. At that time, Scott's counsel revealed to the trial judge that Scott had confessed to him that he had committed the crime and was intent on falsely testifying. Scott's attorney explained he had not been able to dissuade Scott from offering perjured testimony.

¶10. The trial judge held that Scott would be allowed to provide narrative testimony and would be subject to cross-examination, consistent with Mississippi Rule of Professional Conduct 3.3 and its comments. The comment to Rule 3.3 states, "an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence." *See* Rule 1.2(d). Miss. Rule of Prof'l Conduct 3.3 cmt. (as amended 2000).

¶11.   Scott was tried and convicted of the capital murder of Dinkins by a jury and sentenced to life imprisonment without the possibility of parole.

¶12.   The facts are set forth in detail in the Court of Appeals' opinion, and under the standards of review required in this case, it is unnecessary to revisit every detail.  However, in order to reach the issues, we will reiterate pertinent facts.

## DISCUSSION

### I.    Whether the Trial Judge Erred in Failing to Recuse Herself after an Ex Parte Conference with Scott's Attorney.

¶13.   The standard of review to which this Court is bound on the issue of recusal is manifest error.  ***Davis v. Neshoba County Gen. Hosp.***, 611 So. 2d 904, 905 (Miss. 1992) (e.g., ***Turner v. State***, 573 So. 2d 657, 677 (Miss. 1990), ***Ruffin v. State***, 481 So. 2d 312, 317 (Miss. 1984)).  Further, impartiality is presumed, and the presumption must be overcome by the appellant in order for this Court to find manifest error.  ***Jones v. State***, 740 So. 2d 904, 912 (Miss. 1999).  The question is whether or not "a reasonable person, with knowledge of all the circumstances, would harbor doubts about the judge's impartiality."  ***Id.*** (citing ***Davis***, 611 So. 2d at 905, *accord* Miss. Const. art.  VI, §165 (1890)).

¶14.   With regard to this case, Scott and the Court of Appeals misplace their focus on what Scott's counsel told the judge in the ex parte hearing.  The confession that Scott's counsel revealed to the trial judge, after every other remedy had been exhausted, was entirely consistent with the corroborating evidence, including the written confession that had been obtained when Scott was arrested in Marietta, the proposed testimony of the two officers who had obtained an earlier written confession, and all of the other evidence collected in this case.

5

¶15. In support of its holding, the Court of Appeals cites cases involving bench trials. In addition, the Court of Appeals' majority has bolstered its ruling with authority that carries no precedent in this jurisdiction. (E.g.*, Lowery v. Cardwell*, 575 F.2d 727 (9th Cir. 1978), *Butler v. United States*, 414 A.2d 844 (D.C. 1980)). Not a single case cited by the Court of Appeals in support of its ruling involved a jury trial. As such, the facts herein are inapposite to those upon which the Court of Appeals seeks to rest its holding. This was not a bench trial; it was a jury trial. The trial judge applied the proper legal standard to admit the written confession and allowed the jury to weigh the evidence before it. The judge did not need to recuse herself and made no determination as to the truth or falsity of the confession, merely that it met the standard required for admission, that of being voluntary, intelligent, and knowing. *Jeremy Martin v. State*, 854 So. 2d 1004, 1007 (Miss. 2003).

¶16. The Court of Appeals suggests that the trial judge was so persuaded by the attorney's revelation as to make the trial judge certain that Scott was guilty, which resulted in unfair prejudice at trial. If this contention was valid, the existence of a written confession would likewise be prone to persuade any trial judge that a defendant was guilty. This Court entrusts our judges with great discretion. Our trial judges are confronted daily with evidence that would tend to make defendants appear more culpable than not. We presume that our trial judges are aptly equipped to handle these issues and apply the law without fear of undue prejudice. *See, e.g., Turner*, 573 So. 2d at 678 (Miss. 1990). We have stated repeatedly that we will not overrule a trial judge's denial to recuse herself unless we find manifest error.

¶17. Our holding in *Farmer v. State* is illustrative. In *Farmer*, this Court held that a trial judge need not recuse himself because he had been the trial judge when a defendant

6

previously had pleaded guilty. *Farmer v. State*, 770 So. 2d 953, 956-57 (Miss. 2000). "It is not unusual for a judge to sit on successive trials following mistrials or to hear on remand a case where he previously has heard and ruled on the evidence. . . ." *Id.* at 957 (quoting *Garrison v. State*, 726 So. 2d 1144, 1151 (Miss. 1998)).

¶18.    Additionally, Scott places great emphasis on the alleged violation of the attorney-client privilege. Our law states that an attempt to utilize an attorney's service in furtherance of a crime, such as perjury, "forfeits the protection of this rule." *In Re Rules of Prof'l Conduct*, 2005 Miss. LEXIS 723, *21 (Miss. Nov. 3, 2005). Scott's attorney did inform the trial judge that his client had confessed to the crime and intended to perjure himself. However, this revelation was unknown to the jury, and the trial transcript is devoid of anything that would indicate that either the judge or Scott, through his counsel, was prejudiced by this event.

¶19.    The judge, while properly acting as gatekeeper, was the trier of fact as to admissibility of the evidence; however, the trial judge was not the ultimate trier of fact. The jury rendered the verdict based on substantial evidence, including Scott's testimony. The presumption of impartiality remains with nothing to rebut it. The standard of manifest error is not met, and there is no showing that the trial judge's failure to recuse herself had any effect on the jury's deliberations or verdict, as the jury was completely unaware of Scott's verbal confession and the ex parte hearing.

¶20.    As the Court of Appeals' dissent cogently points out, had the trial judge recused herself, any judge who would have presided over the case would have read the record, discovered the ex parte hearing proceedings, and thus would have been placed in exactly the

7

same position as the original trial judge. ***Scott***, 2008 Miss. App. LEXIS 171 at *77-78 (Roberts, J., dissenting).

¶21.   Nothing in the trial transcript indicates that anything was ever said or even intimated about the alleged confession to Scott's own attorney or about Scott's attorney's misgivings about suborning perjury.  Neither was there any showing that the judge in any way treated Scott in a prejudicial manner.  Scott took the stand on his own behalf, and the jury had an opportunity to determine for itself whether or not Scott's written confession and testimony were genuine and credible.  *The jury never heard about the verbal confession to Scott's attorney*.  Therefore, the claim of manifest error by the trial judge for failing to recuse herself must fail.  This Court reverses the Court of Appeals' judgment and reinstates the trial judge's refusal to recuse herself as within her just discretion.

## II.     Whether the Trial Judge Erred in Denying Scott's Motion to Suppress His Written Confession.

¶22.   This Court can reverse a trial court's denial of a motion to suppress only: if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of ***Miranda*** rights; and if the denial was a result of manifest error.  ***Chim v. State***, 972 So. 2d 601, 604-05 (Miss. 2008).  The standard of manifest error is high, and this Court cannot reverse unless the trial judge's ruling has gone against the substantial weight of the evidence.  ***Id.*** at 605.

¶23.   The trial judge must determine beyond a reasonable doubt that a confession was voluntary and knowing and that the defendant was given his ***Miranda*** rights prior to any custodial interrogation. ***Armstead v. State***, 978 So. 2d 642, 646 (Miss. 2008).  Here, a signed

8

*Miranda* waiver and a signed and initialed confession were admitted into evidence. In addition, the officers who *Mirandized* Scott and took his confession were available to (and ultimately did) testify.

¶24. The burden lies with the State to prove that a confession is voluntary. *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966). However, this Court has held that the "burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward." *Bell v. State*, 963 So. 2d 1124, 1134 (Miss. 2007) (citing *Morgan v. State*, 681 So. 2d 82, 89 (Miss. 1996) (further citing *Agee*, 185 So. 2d at 673)). "This makes out a prima facie case for the State on the question of voluntariness." *Id.* The accused is entitled to offer testimony to the contrary, at which point the State must offer the testimony of the officers who witnessed the confession. *Id.*

¶25. The record shows that the officers were available to testify, which left the decision of whether the confession was voluntary to the trial judge's discretion. This Court consistently has held that it "will not reverse [the] trial court on conflicting testimony as to whether coercion [was] used to obtain [a] confession." *Bell*, 963 So. 2d at 1134 (citing *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991)).

¶26. The trial judge allowed the written confession into evidence, which we hold to be within her discretion and substantiated by sufficient evidence in the record. The signed *Miranda* waiver is evidence of a knowing and voluntary confession. *See Jeremy Martin*, 854 So. 2d at 1007 (Miss. 2004). The judge must consider the totality of the circumstances to

9

determine if a defendant intelligently, knowingly, and voluntarily waived his *Miranda* rights. *Id.*

¶27. Here, the trial judge inquired as to whether Scott had been aware of his *Miranda* rights when he was taken into custody. Scott acknowledged that he was aware of them. The judge further inquired as to Scott's intelligence, his ability to read and write, his education, his mental state at the time of the waiver and confession, whether he had slept prior to the confession, and whether he was under the influence of alcohol or drugs. Scott's answers to the judge's questions support the trial judge's finding that the confession was knowing, intelligent, and voluntary.

¶28. The record indicates that Scott had attended at least one year of college, which reflects at least an average level of intellect, and that Scott had been convicted of conspiracy to embezzle, which resulted in some familiarity with the criminal justice system. Scott said he was not under the influence of drugs or alcohol; he was not physically threatened or coerced; he knew his *Miranda* rights; and he was aware he had the right to remain silent or have counsel appointed prior to his confession. All of these factors indicate a person who was aware of his rights and the nature of the charges against him. *Sam Martin v. State*, 871 So. 2d 693, 701 (Miss. 2004) (citing *Neal v. State*, 451 So. 2d 743, 755 (Miss. 1984)).

¶29. Scott has alleged that the officers showed him a photograph of a lethal-injection gurney in an effort to get him to cooperate. The police officers deny this allegation. However, even if this allegation is true, the totality of the circumstances weighs heavily against Scott and toward admission of the confession for the jury to weigh.

10

¶30. All of this evidence indicates that the trial judge undertook a thorough examination of the totality of the circumstances to determine whether the confession was voluntary, intelligent, and knowing. Scott was free to attempt to impeach the confession to the satisfaction of the jury.

¶31. This Court has held that, even if a confession is in violation of a defendant's Fifth or Sixth Amendment rights, (which we do not so hold herein) that confession may be used for impeachment purposes. *Sipp v. State*, 936 So. 2d 326, 331 (Miss. 2006). Further, this Court has stated that "when a defendant takes the stand and testifies, he may be impeached by his own statements – even if those statements were taken in violation of his *Miranda* rights." *Id.* (citing *Bogard v. State*, 624 So. 2d 1313, 1318-19 (Miss. 1993)).

¶32. In order for this Court to reverse the trial court's denial of the motion to suppress, there must be a lack of credible or substantial evidence to support the denial. Because we find the admission to be based on the appropriate principles of law and to be well-supported in the record, we cannot reverse. *Armstead*, 978 So. 2d at 646 (citing *Chim*, 972 at 604 (further citing *Holland v. State*, 587 So. 2d 848, 860 (Miss. 1991)).

¶33. Here, this Court finds the signed *Miranda* waiver, the signed and initialed written confession, and the availability of the police officers who took the confession all support allowing the confession into evidence for the jury to weigh as the ultimate trier of fact. Since the evidence supports the trial judge's denial to suppress the confession, an appellate court cannot reverse. We, therefore, reverse the Court of Appeals and reinstate the trial judge's ruling that the confession met the legal standard required of it for admission.

**III. Whether the Trial Court Erred in Denying a Motion to Dismiss for Failure to Grant a Speedy Trial**.

¶34. We review denial of a motion to dismiss for failure to grant a speedy trial under an abuse-of-discretion standard. *Hersick v. State*, 904 So. 2d 116, 126 (Miss. 2004).

¶35. Our state law provides defendants with a right to a speedy trial under Mississippi Code Annotated Section 99-17-1 (Rev. 2007). The statute reads:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictment has been presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

Miss. Code Ann. § 99-17-1 (Rev. 2007).

¶36. Scott filed three motions for continuance to delay his trial, which is directly contrary to his assertion that he requested, and was denied, a speedy trial. In addition, Scott sought to dismiss his counsel on several occasions and filed several motions pro se. Much like the defendant in *Guice v. State*, Scott appears to be aggrieved, not because he was denied a speedy trial, but rather because he was denied a dismissal for lack of a speedy trial. *Guice v. State*, 952 So. 2d 129, 139 (Miss. 2007). Just as this Court found in *Guice*, defendant's requests for continuance and his filing of motions must be considered when applying the balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

¶37. Under *Barker*, four factors must be considered to determine whether or not a violation of a defendant's Sixth Amendment rights has occurred and whether a defendant has been denied a speedy trial as guaranteed under the United States Constitution. This Court must

12

consider the length of the delay, the reason for the delay, the defendant's assertion of his rights, and whether the defendant has been prejudiced by the delay. *Barker*, 407 U.S. at 530.

¶38.    Applying the law to the facts in this case, the length of the delay does exceed the 270-day benchmark set forth by the Mississippi Legislature. Miss. Code Ann. §99-17-1 (Rev. 2007). However, the delay is largely attributable to Scott and somewhat attributable to a crowded docket. *See Manix v. State*, 895 So. 2d 167 (Miss. 2005) (holding that a speedy trial had not been denied due to a backlog in the crime lab and the failure of the defendant to provide an address for an exculpatory witness).

¶39.    Scott cannot be considered to have asserted his right to a speedy trial when he was asking for continuances to delay his trial on the same day he was requesting a dismissal for failure to provide a speedy trial. Additionally, there is no evidence that Scott was in any way prejudiced by any delay. As we set forth in *Guice*, a delay is not per se evidence of prejudice to the defendant. *Guice*, 952 So. 2d at 139 (citing *Barker*, 407 U.S. at 521).

¶40.    Contrary to the Court of Appeals' ruling that not enough evidence is present to determine whether Scott was afforded a speedy trial, we find sufficient evidence to meet the standard set forth in *Barker* to weigh in the State's favor. We reverse the Court of Appeals and vacate its judgment granting a new evidentiary hearing.

    **IV.**    **Whether the State's Closing Argument Constituted Reversible Error.**

¶41.    This Court reviews denials of a motion for mistrial based on prosecutorial misconduct during closing arguments under an abuse-of-discretion standard. *Flora v. State*, 925 So. 2d 797, 804 (Miss. 2006) (citing *Spann v. State*, 771 So. 2d 883, 889 (Miss. 2000)). The defense

failed to object to the closing argument, which bars this issue. *See Ross v. State*, 954 So. 2d 968, 987 (Miss. 2007).

¶42.    In spite of the procedural bar, the comments made by the prosecutor that Scott was a shyster and a con artist are substantiated by Scott's own testimony. Scott testified that he had been convicted of theft and conspiracy to embezzle; Scott admitted he had used a stolen ATM card, had altered a social security card to change the numbers, and had a stolen license plate on his car to avoid being arrested. *Scott*, 2008 Miss. App. LEXIS 171 at *62. We agree with the Court of Appeals. This issue is without merit. The prosecutor's comments were reasonable inferences drawn from the defendant's own testimony. The closing arguments were within the standards set forth by this Court, and we find no error that would afford Scott a mistrial for prosecutorial misconduct during its closing argument.

V.    **Whether Scott Received Ineffective Assistance of Counsel under the Sixth Amendment**.

¶43.    The Court of Appeals held that this issue would be better brought by motion for post-conviction relief. We have held that it is "unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal." *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003). This Court previously has held that when an ineffective-assistance-of-counsel claim cannot be supported, this Court will refrain from granting relief and preserve the issue for post-conviction relief. *Id.* (citing *Read v. State*, 436 So. 2d 832, 837 (Miss. 1987)).

¶44.    However, in *Hodges*, this Court has clarified when an issue may be brought on direct appeal, referring to our revision to Rule 22 of the Mississippi Rules of Appellate Procedure.

14

*Hodges v. State*, 949 So. 2d 706, 713 (Miss. 2006) (citing Miss. R. App. P. 22). "'[I]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal' if such issues are *based on facts fully apparent from the record*. M.R.A.P. 22[(b)]." *Id.* (emphasis in original). *Id.* Because this issue has been brought to us by Scott on grounds that could have been decided by the trial court, this Court has the power to determine whether or not Scott received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 1052, 80 L. Ed. 674 (1984).

¶45. While we have held it to be a rare case in which this Court will rule on ineffective-assistance-of-counsel claims on direct appeal, here we see no evidence in the record to support a viable claim for ineffective assistance of counsel that would meet the two-prong test set forth in *Strickland*, 466 U.S. at 668.

¶46. Under *Strickland* inn order to find ineffective assistance of counsel, this Court must find that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. In other words, counsel's performance must have been so deficient that there would have been a different verdict were it not for that deficiency. *Givens v. State*, 967 So. 2d 1, 9-10 (Miss. 2007).

¶47. Scott claims ineffective assistance of counsel based on false arrest, failure to interview alibi witnesses, failure to view alleged evidence, and failure to object to the prosecutor's closing argument. Each of these issues can be addressed on direct appeal, because each of these claims of error could have been decided by the trial court.

15

> There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that but for the attorney's errors, the outcome of the trial would have been different, will we find that counsel's performance was deficient.

*Id.* at 5 (citing *Walker v. State*, 863 So. 2d 1, 22 (Miss. 2003) (further citing *Russell v. State*, 849 So. 2d 95, 122 (Miss. 2003) (quoting *Holly v. State*, 716 So. 2d 979, 989 (Miss. 1998))).

¶48. The record indicates that Scott was arrested in Marietta, Georgia, under an outstanding warrant for his arrest, which warrant was never disputed. Scott's counsel delineated the effort made to locate the purported alibi witnesses provided by Scott, witnesses who never could be located. In addition, Scott's roommate did not corroborate Scott's contention that he was asleep at home. Whether or not Scott's counsel viewed a videotape of an individual purchasing cigarettes from a convenience store after the murder and armed robbery is a question of strategy left to Scott's counsel. *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995) (*citing Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984) (holding that counsel may choose whether or not to file motions, interview witnesses, or make objections as a part of their trial strategy)).

¶49. Finally, Scott claims error for his counsel's failure to object to the prosecutor's comments that Scott was a con man and a shyster. All of these issues fall squarely within the purview of trial strategy and unless clearly deficient, the burden is not met. *Id.*

¶50. We hold that the prosecutor's comments were entirely acceptable given Scott's testimony that confirmed he had been convicted of theft and conspiracy to embezzle, among other crimes. Therefore, we find nothing in the record to support a claim for ineffective assistance of counsel on any ground brought by Scott.

16

¶51.    Although we need not address whether the outcome would have been different, since the first prong of *Strickland* has not been met, this Court notes ample evidence was available to the jury to supports its guilty verdict.  This Court reverses and vacates the Court of Appeals' judgment and affirms and reinstates the jury verdict.

### CONCLUSION

¶52.    Having considered all of the issues addressed by the Court of Appeals, this Court reverses and vacates the Court of Appeals' opinion.  We reinstate the guilty verdict rendered by the jury in the Hinds County Circuit Court and the sentence of life in prison without the possibility of parole.

¶53.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

       **WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR.  GRAVES AND DICKINSON, JJ., CONCUR IN RESULT ONLY. DIAZ, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**