LEE, C.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. A jury in the Jefferson Davis County Circuit Court found Brandon Charles Sullivan guilty of murder. Sullivan was sentenced to life in the Mississippi Department of Corrections. Sullivan filed post-trial motions, which were denied. Sullivan now appeals asserting that: his confession should have been suppressed, and the verdict is against the overwhelming weight of the evidence.
 

 FACTS
 

 ¶ 2. At approximately 9:00 a.m. on December 6, 2006, Robert Dale Sullivan entered the home of his mother, Mary Lou Sullivan, on Albert Graves Road in Jefferson Davis County. Robert had been concerned about Mary Lou because she had missed an appointment that morning, and her truck was missing. On the way to Mary Lou’s house, Robert asked a neighbor, Billy Wayne Stewart, to accompany him. The men entered the house and found Mary Lou lying face down on the kitchen floor in a pool of blood. Dr. Steven Hayne, a forensic pathologist, testified that Mary Lou’s autopsy showed several types of injuries consistent with being produced by blunt force, with the most severe located on the back of her head. Mary Lou had a large bruise on the back of her head, extensive bruising on her face, five lacerations on the back of her head, two
 
 *862
 
 lacerations on the left side of her head, and two lacerations on the right side of her head. Mary Lou also had bruises and scrapes on her hands and arms consistent with defensive posturing. Dr. Hayne determined that Mary Lou died from the injuries to her head. It was estimated that Mary Lou had died between 7:00 p.m. and 9:00 p.m. on December 5th.
 

 ¶ 3. After the police arrived on the scene, it was determined that Sullivan, Robert’s son and Mary Lou’s grandson, was a possible suspect. Robert had seen Sullivan and another white male near the crime scene on December 5. Micah Forten-berry testified that on December 5th at approximately 6:00 p.m., he gave Sullivan a ride and dropped him off a little less than a mile from Mary Lou’s house. Sullivan had told Fortenberry that his car had broken down.
 

 ¶ 4. During the course of the investigation, Mary Lou’s missing truck was found in a wooded area. The authorities collected a 2x2 piece of wood with blood on it and another piece of wood wrapped in yarn also with blood on it. Testing determined that the blood found on the 2x2 matched Mary Lou’s blood sample. Authorities also searched Sullivan’s house where they discovered blood spatter on a pair of Sullivan’s overalls. Testing determined that the blood on the overalls matched Mary Lou’s blood sample. Several pieces of wood were recovered from the crime scene, as well as $20,000 in cash found in a shoe box in a closet.
 

 ¶ 5. Sullivan was arrested, read his rights, and interrogated by Roy Clingon and James Herzog, both special agents with the Mississippi Bureau of Investigation. Sullivan was interrogated at the Jefferson Davis County Sheriffs Department. In his first statement, Sullivan stated that Steven Polk had committed the murder, but he had taken the truck and the wood board and hidden them. However, Polk had an alibi and was not developed as a suspect. In his second statement, Sullivan stated that he had gotten a ride from someone and got out near Mary Lou’s house. Sullivan stated that he hid a 2x2 piece of wood in his shirt and entered Mary Lou’s house. Sullivan admitted to hitting her on the head with the 2x2 in order to steal her money, but he did not intend to kill her. Sullivan also admitted that he “freaked out” and kept hitting her over the head. Sullivan stated that he then grabbed a rifle, picked up the 2x2, and took Mary Lou’s truck. Sullivan later pawned the rifle for crack cocaine and left the truck and 2x2 in a wooded area. Sullivan also admitted that he sent his father, Robert, on a false errand in order to keep him away from Mary Lou’s house.
 

 ¶ 6. During trial, Sullivan asserted that Agents Clingon and Herzog coerced and threatened him into confessing to the murder. Sullivan testified that another man, Dwayne Altman, had killed Mary Lou. Sullivan testified that he had stepped outside Mary Lou’s house and heard a loud thump from inside the house. Sullivan said that Altman then exited Mary Lou’s house carrying the 2x2. Sullivan testified that he got scared and took Mary Lou’s truck. On cross-examination, Sullivan admitted that he knew Mary Lou kept cash in her house.
 

 DISCUSSION
 

 I. MOTION TO SUPPRESS
 

 ¶ 7. In his first issue on appeal, Sullivan argues that the trial court erred in denying his motion to suppress his statements to the authorities. Sullivan contends that he was coerced and threatened into confessing to the murder. In reviewing the trial court’s denial of Sullivan’s motion to suppress his confession, this Court “will only reverse the trial
 
 *863
 
 court’s determination of this issue when such determination is manifestly wrong .... or contrary to the overwhelming weight of the evidence.”
 
 Glasper v. State,
 
 914 So.2d 708, 716 (¶ 21) (Miss.2005). When ruling on the admissibility of a confession, the trial court must determine, based on the totality of the circumstances, whether the confession was voluntarily and knowingly given and whether the defendant was given his Miranda
 
 [1]
 
 rights.
 
 Scott v. State,
 
 8 So.3d 855, 861 (¶ 23) (Miss. 2008).
 

 ¶ 8. Sullivan claims that Agents Clingon and Herzog induced him to confess by promises of a lenient sentence, namely that he would not receive the death penalty. Sullivan contends that one of the agents told him that a superior officer enjoyed watching people get the lethal injection. One of the agents purportedly described to Sullivan the physical effects he would suffer during the lethal injection. Sullivan also argues that he was placed in a cold cell without food or water for the majority of his detainment prior to his confession.
 

 ¶ 9. Agents Clingon and Herzog testified about Sullivan’s interrogation during the hearing on Sullivan’s motion to suppress. Agents Clingon and Herzog first interrogated Sullivan at approximately 1:30 p.m. on December 6th, the day after Mary Lou’s murder. According to the record, Sullivan was informed of his
 
 Miranda
 
 rights and signed a waiver of those rights at 1:36 p.m. Sullivan was questioned for approximately three hours, but his statements were not recorded until the last twenty minutes of his interrogation. Agent Herzog testified during the suppression hearing that they waited to videotape Sullivan’s statements because they were unsure what information they would be receiving from him. After doing some investigation into Sullivan’s first statement, the agents interrogated Sullivan again at 12:04 on the morning of December 7th. Sullivan was again informed of his
 
 Miranda
 
 rights and signed a waiver of those rights at 12:07 a.m. It was during this interrogation that Sullivan confessed to killing Mary Lou.
 

 ¶ 10. Agent Clingon testified during the suppression hearing that Sullivan appeared disheveled but was coherent and did not appear to be under the influence of alcohol or narcotics. In regard to Sullivan waiving his
 
 Miranda
 
 rights, Agent Clingon thought that Sullivan appeared to understand the questions and answered them coherently. When advised of his right to an attorney, Sullivan responded that he did not need an attorney. At no point during either interrogation did Sullivan invoke his right to remain silent. Agent Clingon further stated that: he did not promise Sullivan anything in return for confessing; he did not threaten Sullivan; and Sullivan never asked to stop the interrogation. Agent Clingon also stated that he never heard Agent Herzog promise Sullivan anything in exchange for confessing. At one point during the first interrogation, the agents provided Sullivan with chewing tobacco and water. Agent Clingon stated that Sullivan never asked for food.
 

 ¶ 11. Agent Herzog testified and corroborated Agent Clingon’s testimony. Agent Herzog stated that he never told Sullivan that his superior officer enjoyed watching lethal injections. Agent Herzog further testified that he did not tell Sullivan that the State would decline to seek the death penalty in return for his confession.
 

 ¶ 12. The trial court found that Sullivan’s statements during both interro
 
 *864
 
 gations “were freely, knowingly, and voluntarily given to the agents without any threats, coercion or offer of reward.” The State has the burden to prove the confession was voluntary.
 
 Scott,
 
 8 So.3d at 861 (¶ 24). To make a prima facie case of voluntariness, the State meets the burden by offering “the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward.”
 
 Bell v. State,
 
 963 So.2d 1124,1134 (¶ 26) (Miss.2007) (citation omitted). The State met its burden to prove that Sullivan’s confession was voluntary. “Upon the State’s presentation of a prima facie case of admissibility, the burden shifted to [the defendant] to provide evidence to rebut the State’s assertion.”
 
 Holloway v. State,
 
 809 So.2d 598, 604 (¶ 18) (Miss.2000). Sullivan failed to produce any evidence, through testimony or otherwise, that his confession was coerced; thus, we cannot find that the trial court erred in denying his motion to suppress his confession. This issue is without merit.
 

 II. OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 13. In his final issue on appeal, Sullivan argues that the verdict is against the overwhelming weight of the evidence. Sullivan contends that the State failed to admit competent evidence that proved he had committed the crime. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005).
 

 ¶ 14. Sullivan argues that without his confession, the State’s evidence was circumstantial. However, we have previously found that Sullivan’s confession was properly admitted. In addition to Sullivan’s confession, there was corroborating evidence, namely the bloody overalls found in Sullivan’s house. The blood spatter found on those overalls matched Mary Lou’s blood sample. Sullivan was also seen in the vicinity of Mary Lou’s house prior to her murder.
 

 ¶ 15. Sullivan’s other arguments amount to attacks on the credibility of the witnesses. It is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence.
 
 Davis v. State,
 
 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
 

 ¶ 16. We cannot find that to allow Sullivan’s conviction to stand would sanction an unconscionable injustice. This issue is without merit.
 

 ¶ 17. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON DAVIS COUNTY.
 

 IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).