# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00328-COA

RONALD JOSEPH GALLOWAY A/K/A                           APPELLANT
RONALD J. GALLOWAY A/K/A RONALD
GALLOWAY

v.

STATE OF MISSISSIPPI                                    APPELLEE


| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/2013 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN A. SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL BY: LAURA H. TEDDER |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE WITHIN 1,500 FEET OF A PUBLIC PARK AND SENTENCED AS A HABITUAL OFFENDER TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT HOPE OF PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 12/01/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE, CARLTON AND WILSON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In 2013, Ronald Joseph Galloway was convicted by a jury in the Hancock County

Circuit Court of possessing less than thirty grams of marijuana, with the intent to distribute

within 1,500 feet of a public park. He was sentenced as a habitual offender to twenty years in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole or probation. Aggrieved, he appeals, claiming the evidence was insufficient to support the verdict and that the circuit court erred by admitting his confession into evidence. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. On August 26, 2011, Detectives James Burch and Robert O'Neal, narcotics specialists with the Bay Saint Louis Police Department in Bay Saint Louis, Mississippi, were working with a confidential informant who was performing "buy-walk operations." In the buy-walk operations, the informant was sent undercover to buy narcotics at random locations in areas known for high instances of narcotics sales. The informant was equipped with two recording devices – one allowed Detectives Burch and O'Neal to hear everything as it was taking place, while the other served as a standard audio and video recording device that could be accessed at a later time.

¶3. While the informant was biking through Martin Luther King Jr. public park – a park well known for narcotic-related activity – he was flagged down by a man. A conversation ensued between the two men regarding what type of drugs the informant was seeking. The informant told the man that he was looking for crack cocaine. At that point, the man retrieved a brown paper bag from a nearby trash can and told the informant that he did not have crack cocaine but that he could sell him marijuana. The informant told the man that he did not have money to purchase the marijuana at that time, but that he would try to come

2

back later.

¶4. As the informant began biking away, he gave the detectives listening to the recording device a description of the man who had attempted to sell him marijuana. The informant stated that the man was a black male between five feet eight inches tall and five feet eleven inches tall. He was wearing a stocking skull cap, a black t-shirt with a blue logo on it, black jeans, and dress shoes.

¶5. Detectives Burch and O'Neal gave nearby Bay Saint Louis Police Department patrol officers the description the informant had given them. Officers Randall Darty and Don Gray immediately responded and observed a man sitting on a bench in the park wearing the exact clothing described by the informant. Office Darty approached the man and asked for the man's identification. Officer Darty testified that the man refused to cooperate and soon became belligerent and loud. As Officer Darty walked closer to the man, he observed a bulge in the man's right pocket. Officer Darty then asked the man to place his hands on the handrail of the bench so that he could identify the bulge in the man's pocket. Instead of complying, the man fled from Officer Darty. As he was running away, Officer Darty noticed a light blue and white design on the back of the man's jeans and also noticed him drop a brown paper bag from his right hand. Officer Gray continued the pursuit while Officer Darty stayed behind to retrieve the bag the man had dropped and to radio to other nearby units to pursue the man. Officer Darty testified that the bag contained multiple small bags of marijuana.

¶6. Approximately thirty minutes later, while searching for the suspect, Detectives O'Neal

and Burch encountered Galloway. The detectives noted that he matched the descriptions that the informant and Officer Darty had provided. However, Galloway was wearing a different shirt and shoes, and he was not wearing a stocking skull cap. Nonetheless, he was wearing black jeans with a blue and white design on the back, seemingly identical to what Officer Darty had described. The detectives observed that Galloway was breathing heavily and sweating. They immediately called Officer Darty. Officer Darty arrived on the scene and positively identified Galloway as the man he had encountered in the park.

¶7. Galloway was taken into custody and transported to the Bay Saint Louis Police Station. As he was being handcuffed, Galloway was read his *Miranda*[1] rights. When he arrived at the police station, he was interviewed by Detectives Burch and O'Neal. He agreed to waive his rights and give the detectives a statement. Galloway informed the detectives that he had a fifth-grade education and could not read or write. As such, Detective O'Neal read to Galloway a form advising him of his rights and a form allowing Galloway to waive his rights. Galloway signed the waiver-of-rights form. He was then videotaped and audiotaped while he admitted to possessing the marijuana in question with an intent to sell it.

¶8. Galloway was indicted by a grand jury in November 2012 for one count of possession of a controlled substance with intent to distribute it within 1,500 feet of a public park. He pleaded not guilty. A trial ensued in 2013. Prior to the trial, Galloway's counsel filed a motion to suppress Galloway's confession. The circuit judge denied the motion, and the confession was admitted into evidence during the trial. Also admitted into evidence was the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Mississippi State Crime Lab's analysis of the substance found in the brown paper bag. The analysis showed that the substance was less than thirty grams of marijuana. The jury ultimately found Galloway to be guilty. Galloway moved for a judgment notwithstanding the verdict (JNOV), which was denied. The circuit judge then sentenced Galloway as a habitual offender to twenty years in the custody of the MDOC without the possibility of parole or probation.

¶9. On appeal, Galloway asserts that the circuit judge erred by denying his motion for a JNOV because the evidence was insufficient to support the conviction and that the circuit judge erred by allowing the confession to be admitted into evidence.

## DISCUSSION

¶10. A motion for a directed verdict and a motion for a JNOV both challenge the sufficiency of the evidence. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). The Mississippi Supreme Court has noted that in considering the denial of motions for a directed verdict and a JNOV, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

¶11. Hence, the underlying question is whether any rational trier of fact could have found, beyond a reasonable doubt, that Galloway knew that the brown paper bag contained marijuana, possessed dominion and control over the bag, and had intended to sell the marijuana while in the park. *See Jackson v. State*, 689 So. 2d 760, 767 (Miss. 1997); *Berry*

*v. State*, 652 So. 2d 745, 748 (Miss. 1995); *Campbell v. State*, 566 So. 2d 475, 477 (Miss. 1990). The evidence presented at trial showed that both the informant and Officer Darty witnessed Galloway with the brown paper bag in his hand. The informant observed Galloway retrieve the brown paper bag from a nearby garbage can in the park as Galloway was offering to sell the informant marijuana. Later, Officer Darty witnessed Galloway drop the bag in the park while evading the authorities. The eyewitness testimony alone is enough to support a juror's finding that Galloway possessed the marijuana and intended to sell it in the public park. Furthermore, Galloway admitted to having possessed the marijuana in question and also admitted that his intent was to sell the marijuana in the park.

¶12. Nonetheless, Galloway challenges the circuit judge's denial of his request to suppress the admission of his confession into evidence. He claims that his confession was not knowingly and intelligently made. A motion to suppress a confession will be reversed only "if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of *Miranda* rights; and if the denial was a result of manifest error." *Scott v. State*, 8 So. 3d 855, 861 (¶22) (Miss. 2008). The burden of proving that a confession was validly made is met through "testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward." *Id*. at (¶24).

¶13. Here, while Galloway was only equipped with a fifth-grade education, his rights were explained to him on numerous occasions. His *Miranda* rights were read to him as he was being handcuffed in the park. Detective O'Neal also advised Galloway of his *Miranda* rights

6

prior to the interview at the police station. Immediately thereafter, Detective O'Neal read aloud to O'Neal the form explaining his rights. Galloway stated that he understood his rights and the consequences of waiving his rights but still wanted to waive them. Nonetheless, Galloway asserts that his minimal education and illiteracy negates his indication to the detectives that he understood his rights and the waiver of those rights.

¶14. In *Morgan v. State*, 681 So. 2d 82, 84-85 (Miss. 1996), Daryl Leonard Morgan was convicted of murder and armed robbery after he gave a videotaped confession to authorities, which was later admitted into evidence at trial. On appeal, Morgan asserted that because he was illiterate, his confession was not properly made. *Id.* at 85-86. The supreme court reviewed the videotaped confession along with the testimony rendered by the officers involved and determined that Morgan's illiteracy alone did not negate the voluntariness of the confession and that the evidence supported the circuit judge's decision to allow the confession into evidence. *Id.* at 88.

¶15. Such is the case here. Galloway's inability to read and write did not prohibit him per se from understanding his rights. He was read his *Miranda* rights on at least two separate occasions and was also read the form outlining both his rights and the consequences of waiving those rights should he confess. The facts that Galloway was unable to actually read the form himself and only possessed minimal formal education do not automatically bar Galloway from comprehending his rights and the ramifications of waiving them.

¶16. Additionally, the circuit judge was in the best position to make the fact-finding decision of whether or not Galloway voluntarily waived his rights by making a confession.

The circuit judge saw the videotaped confession and heard the testimony of Detective O'Neal, who had personally explained to Galloway his rights. As stated by the supreme court, "we will not overturn a finding of fact made by a trial judge unless it [is] clearly erroneous." *Id*. at 87. Given the evidence outlined above, we cannot deem clearly erroneous the circuit judge's decision to suppress the confession when it is supported by the record. These issues are meritless.

¶17. **THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE WITHIN 1,500 FEET OF A PUBLIC PARK AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE HOPE OF PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**