# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00964-COA

SANDRA MORGAN A/K/A MAY LEE A/K/A                    APPELLANT
SANDRA L. MORGAN

v.

STATE OF MISSISSIPPI                                         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/17/2015 |
| TRIAL JUDGE: | HON. C.E. MORGAN III |
| COURT FROM WHICH APPEALED: | CHOCTAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JASON L. DAVIS KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF CONSPIRACY TO COMMIT CAPITAL MURDER AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION |
| DISPOSITION: | AFFIRMED - 03/14/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., GREENLEE AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. A jury in the Circuit Court of Choctaw County, Mississippi, convicted Sandra Morgan (Morgan) of one count of conspiracy to commit capital murder. Morgan appeals the circuit court's denial of two pretrial motions: (1) her motion for a mental-competency evaluation,

and (2) her motion to suppress her second statement to the police. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. Sandra Morgan (Morgan) and Billy Morgan (Billy) married in 1994. In 2012, Morgan was diagnosed with bipolar personality disorder and depression. Around February 2014, Morgan met Devonta Anderson (Anderson) at a community college in Holmes County. That spring, Morgan's mother was killed by a tornado, and Morgan received $30,000 in insurance proceeds from the destruction of her mother's home.

¶3. In the summer of 2014, Morgan moved Anderson in to her home that she shared with Billy. Morgan also permitted Anderson's cousins, Leontay Ellington (Leontay) and Levontaye Ellington (Levontaye), and his friend, Michael Oliver (Michael), to stay at her home. Over the course of the summer, Morgan spent her insurance proceeds buying items for her guests. She spent most of the money on Anderson, buying him, among other items, a 2003 Ford Mustang, a gun, clothes, and shoes.

¶4. Morgan often complained to Anderson and Levontaye about Billy's past treatment of her, and eventually asked Anderson to kill Billy. Anderson reluctantly agreed to do so. On or around July 14, 2014, Anderson entered Billy and Morgan's bedroom, while Billy was sleeping, and pointed a gun at his head. According to Anderson, he decided he could not kill Billy after entering the bedroom. Morgan then walked in to the bedroom and told Anderson that if he killed Billy he would have to kill Billy's Aunt Cleo, who lived next door, since she would likely hear the gunshot. Anderson claimed that the thought of having to kill both Billy

2

and his aunt was too much, and he decided against it.

¶5. The Choctaw County Sheriff's Department eventually learned of Morgan and Anderson's possible murder conspiracy through Levontaye and Anderson. On August 4, 2014, Morgan voluntarily walked in to the Choctaw County Sheriff's Department. Investigator Marcus Rodriguez (Rodriguez) and Chief Deputy Lee Upchurch (Upchurch) placed her in the office and prepared to interview her. They gave Morgan a waiver-of-rights form and asked her if she understood what was read to her. She stated that she did and signed the form. Morgan proceeded to give two statements to Rodriguez and Upchurch. Though both statements were recorded, the recording of the first statement only captured a portion of the statement. Morgan was arrested and taken to the Winston County Jail.

¶6. On August 11, 2014, Rodriguez went to retrieve Morgan from jail. When Rodriguez arrived there, Morgan informed him that she wanted to speak with him again. Rodriguez told Morgan that he could not speak with her since she had an attorney. She asserted that she did not have an attorney. Rodriguez agreed to speak with her. When they arrived to the sheriff's department, Morgan executed another waiver-of-rights form prior to the interview. Morgan gave her second statement, and Rodriguez recorded it in its entirety.

¶7. Before trial, Morgan filed motions to suppress all references to the two statements. At the suppression hearing, Rodriguez and Upchurch both testified that Morgan appeared to understand the questions that were asked of her during her first statement, and she did not appear to be under the influence. Both officers also testified that she gave her statements willingly and voluntarily. Rodriguez also testified that Morgan appeared to be lucid and not

3

under the influence when she gave her second statement. Rodriguez even highlighted the fact that Morgan asked to speak with him directly, stating that she was not represented by counsel.

¶8. The State asserted that Morgan's statements were voluntarily made since Morgan initiated the second statement by requesting to speak with Rodriguez. Morgan, on the other hand, testified that she felt pressured to answer Rodriguez's questions, because she was struggling with her mother's death and was not receiving any assistance with her grief. Morgan then stated that she told Rodriguez that she did not intend to kill Billy. After considering the testimony given during the suppression hearing, the trial court found that the first statement was tainted, since it was only partially recorded and could not fully depict the statements made between Morgan, Rodriguez, and Upchurch. Nevertheless, the trial court found the second statement should be allowed in evidence, because it was fully recorded; Morgan executed a waiver-of-rights form, and it appeared that the statement was "freely and voluntarily given." As a result, the trial court suppressed the first statement, but admitted the second statement in evidence.

¶9. Morgan also filed a motion for a psychiatric evaluation. The circuit court held a hearing, at which Morgan's counsel claimed that Morgan suffered from several disorders and was unable to assist in the preparation of her defense. Billy was the only witness called to substantiate Morgan's claim of mental incompetence. Billy testified to the number of medications that Morgan took for her personality disorder, and claimed that Morgan had shown some confusion after she was released on bail. Morgan's counsel never produced her

4

medical records, her previous doctor's diagnosis/evaluation, or a medical history of her mental illness. As a result, the trial court found that Billy's testimony alone was not enough to substantiate Morgan's claim. The judge denied Morgan's motion stating, "the law presumes that people are sane and competent to stand trial. The evidence was totally insufficient to prove otherwise. And I do not find that she is incompetent to stand trial."

¶10. At trial, the State called several witnesses, including Levontaye, Rodriguez, Upchurch, and Anderson. Anderson, a key witness, discussed how the conspiracy began. Anderson testified that Morgan constantly complained about Billy, and she wished someone would kill him. According to Anderson, Morgan told him that he could have anything that his heart desired if he killed Billy. Anderson agreed to kill Billy, but decided against it after Morgan told him that he would also have to kill Billy's aunt. The jury found Morgan guilty of conspiracy to commit murder. Morgan was sentenced to fifteen years in the custody of the Mississippi Department of Corrections, with five years suspended. Morgan now appeals.

¶11. Morgan raises two issues on appeal: the circuit court's denial of (1) the motion for a mental-competency evaluation and (2) the motion to suppress Morgan's second statement. Finding no error, we affirm.

## STANDARD OF REVIEW

¶12. The standard of review for an appellate court to determine if there was an abuse of discretion is whether "the trial judge received information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted [the judge] to the possibility that the defendant could neither understand the proceedings,

5

appreciate their significance, nor rationally aid [her] attorney in [her] defense[.]" *Goff v. State*, 14 So. 3d 625, 644 (¶66) (Miss. 2009) (quoting *Conner v. State*, 632 So. 2d 1239, 1248 (Miss. 1993) (overruled on other grounds by *Weatherspoon v. State*, 732 So. 2d 158 (Miss. 1999))).

¶13. The determination of whether a trial court has a "reasonable ground" to suspect incompetency is addressed to the discretion of the trial judge. *Bradley v. State,* 116 So. 3d 1093, 1095-96 (¶¶13-14) (Miss. Ct. App. 2013) (quoting *Harden v. State*, 59 So. 3d 594, 601 (¶14) (Miss. 2011)). When a trial court determines that a defendant is competent to stand trial, we will not overturn such a finding unless it was "manifestly against the overwhelming weight of the evidence." *Jay v. State*, 25 So. 3d 257, 261 (¶25) (Miss. 2009) (quoting *Martin v. State*, 871 So. 2d 693, 697 (¶12) (Miss. 2004)).

¶14. This Court can reverse a trial court's denial of a motion to suppress only: if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of *Miranda*[1] rights; and if the denial was a result of manifest error. *Scott v. State,* 8 So. 3d 855, 861 (¶22) (Miss. 2008) (quoting *Chim v. State*, 972 So. 2d 601, 604-05 (¶10) (Miss. 2008)). The standard of manifest error is high, and this Court cannot reverse unless the trial judge's ruling has gone against the substantial weight of the evidence. *Id.* at 861.

### DISCUSSION

¶15. To be deemed mentally competent to stand trial, a defendant must have "the sufficient

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. "*Coleman v. State*, 127 So. 3d 161, 164 (¶8) (Miss. 2013) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

¶16. The trial judge found that Billy's testimony during the hearing on Morgan's motion for a psychiatric evaluation was insufficient to bring into question her mental competency. Billy testified that Morgan took multiple medications for her varying mental disorders. Billy further testified that while Morgan was home on bail, she showed signs of confusion. At the conclusion of his testimony, Billy stated that Morgan battled with a "nervous condition" for years. Billy claimed that when Morgan missed her medication, Morgan acted as if she had split-personality disorder. Billy's testimony was the only proof presented by the defense at Morgan's psychiatric hearing. Morgan's counsel did not submit evidence of Morgan's psychiatric medications, nor did they present any substantiating evidence to support Morgan's mental-incompetence claim. The State rested, and the trial judge had only Billy's testimony to rely on when determining Morgan's competency. The trial judge found that Billy's testimony alone was insufficient to find Morgan mentally incompetent, and we agree.

¶17. The evidence did not illustrate that Morgan was mentally incompetent when she gave her first statement to Rodriguez and Upchurch, or her second statement to Rodriguez only. Morgan walked in to the police station of her own volition, without the threat of arrest or detainment and initiated her interview with Rodriguez and Upchurch. She executed a waiver-of-rights form and acknowledged that she understood her rights. Though the trial court

7

found that the first statement was inadmissible, the inadmissibility was only a result of the statement being partially recorded.

¶18. Seven days after Morgan's first statement, Morgan asked to speak directly with Rodriguez. Rodriguez stated that he would not speak to Morgan, because he believed that she was represented by counsel. Morgan expressly stated that she did not have an attorney and persisted in giving a second statement. Morgan executed another waiver of rights and proceeded to give her second statement, implicating herself in a conspiracy to kill Billy. Morgan's statement at the suppression hearing, coupled with the evidence, or lack thereof, presented at the hearing on Morgan's motion for a psychiatric evaluation, failed to provide the trial judge with a reasonable ground to believe that Morgan was incompetent to stand trial or to give statements to the police.

¶19. Where "the trial judge did not find that a reasonable ground existed to suspect that [the defendant] was mentally incompetent to stand trial, [he] was not required to order a competency hearing." *Evans v. State*, 984 So. 2d 308, 313 (¶9) (Miss. Ct. App. 2007). Because Billy's testimony regarding Morgan's mental state was insufficient to raise questions of her mental competency, we find that the trial court did not err in denying Morgan's motion for a psychiatric evaluation.

¶20. The trial judge must determine beyond a reasonable doubt that a confession was voluntary and knowing and that the defendant was given her *Miranda* rights prior to any custodial interrogation. *Armstead v. State*, 978 So. 2d 642, 646 (¶11) (Miss. 2008). The burden lies with the State to prove that a confession is voluntary. *Agee v. State*, 185 So. 2d

8

671, 673 (Miss. 1966). However, the Mississippi Supreme Court has held that the "burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward." *Scott v. State*, 8 So. 3d 855, 861 (¶24) (Miss. 2008). Morgan's defense counsel moved to suppress all recorded statements that she gave during the police interviews, asserting that they were coerced and involuntarily given.

¶21. During the hearing on the motion to suppress, Rodriguez and Upchurch testified that Morgan did not appear under the influence of drugs or alcohol and appeared to understand the officers' line of questioning when she made her first statement. There were no warrants out for Morgan's arrest, and Morgan admitted that she was motivated to go to the sheriff's department when she learned that Levontaye and Anderson were being detained and questioned by law enforcement. Morgan's first statement was only partially recorded. As a result, the trial court found that Morgan's first statement was likely tainted and should be suppressed. However, the trial court found that the second statement given by Morgan was voluntarily and freely made.

¶22. Morgan's second interview took place seven days after her initial statement. Morgan requested to speak with Rodriguez specifically and expressly stated that she was not represented by counsel. Morgan executed another waiver-of-rights form and made statements that implicated her in a conspiracy to commit murder. Rodriguez also testified that Morgan did not appear to be under the influence, and that she understood his line of questioning when she gave her second statement. The trial court found that the statement

9

was given voluntarily and without coercion.  Finding no error, we find that Morgan was mentally competent to stand trial and the trial court did not err in admitting her second statement into evidence.  Finding no error, we affirm the circuit court's judgment.

¶23.    **THE JUDGMENT OF THE CIRCUIT COURT OF CHOCTAW COUNTY OF CONVICTION OF CONSPIRACY TO COMMIT CAPITAL MURDER AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO CHOCTAW COUNTY**.

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR.  WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**