# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-KA-00908-SCT

*TOMARCUS MONTE FULKS a/k/a TOMARCUS MONTE FAULKS a/k/a TOMARCUS FULKS a/k/a TOMARCUS M. FULKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/2011 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF LESLIE S. LEE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/11/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     This Court reversed the conviction and sentence in the first trial in this case on July 23, 2009, and remanded the case to the trial court, finding that the defendant, Tomarcus Monte Fulks, had been entitled to a continuance based on the State's untimely disclosure of a key witness–Joshua Glenn. *Fulks v. State*, 18 So. 3d 803 (Miss. 2009). On May 27, 2011, a jury reconvicted Fulks of armed robbery and acquitted him of aggravated assault in Lowndes County Circuit Court. He received a sentence of thirty-five years in the custody of

the Mississippi Department of Corrections (MDOC).

¶2.     On appeal, Fulks raises the following issues: (1) whether the trial court erred in allowing the State to introduce Fulks's prior testimony from his first trial; (2) whether the trial court erred in denying Fulks's motion for recusal; (3) whether the trial court erred in allowing the prosecutor to inform the jury that coindictee Joshua Glenn had entered a plea of guilty to a charge of aiding and abetting after the fact; and (4) whether the trial court erred when it allowed prior testimony of State's witness Sherry Franks, who was found to be "unavailable" for trial, into evidence. Finding no error, we affirm.

## FACTS

¶3.     Prior to the commencement of Fulks's second trial, several pretrial matters were before the court. On November 12, 2010, the court held a hearing regarding Fulks's motion for bond and request for discovery. The court ultimately denied Fulks's request, stating that Fulks could access the first trial's transcript for the State's witness testimony.

¶4.     On February 17, 2011, the State filed a motion to use the previous testimony of two witnesses from the first trial, Sherry Franks and Billy Joe Franks. The Frankses were in their home asleep on the night of the break-in that occurred in July 2005. The State urged the court to allow the testimony of the Frankses to be admitted into evidence based on Mississippi Rule of Evidence 804, explaining that Billy Joe Franks was deceased and that Sherry Franks was unable to remember the events surrounding the incident due to her failing memory. In his earlier testimony, Billy Joe Franks had stated that a male held a chrome pistol to his head and that the male and a female with a towel around her head demanded money. He had stated that, although he could not identify the man, he was positive that a man had been holding a

2

gun to his head. He had also stated that the female struck his arm with a baseball bat and broke his arm in two places. He fired one shot from his pistol as the intruders left his home. In her former testimony, Sherry Franks had testified that when she jumped out of bed, she was confronted by a young black male with a gun. She also stated that she saw a female wearing a white turban and holding a baseball bat.

¶5. On February 18, 2011, the State filed a motion for continuance, or, in the alternative, a motion for the introduction of Joshua Glenn's earlier testimony. Fulks's coindictee Joshua Glenn had testified at Fulks's first trial and previously had entered a guilty plea to a charge of accessory after the fact. He was sentenced to a term of five years in the custody of the MDOC. At some point after his sentencing, Glenn's probation was transferred to Texas. Claiming that Glenn was a necessary and material witness, the State requested that the court either grant a continuance or admit Glenn's earlier testimony pursuant to Mississippi Rule of Evidence 804 (unavailability of witness). The State contended that, if Glenn were to testify, he would state that he and Fulks had ridden in a vehicle with several others to the Frankses' home in the middle of the night, that all of the occupants of the vehicle had gotten out of the car and walked to the Frankses' door, that one of the occupants had possessed a firearm, and that Fulks had kicked in the door to the Frankses' home. Glenn also would have testified that he never had entered the home.

¶6. In April 2011, Fulks filed a motion for recusal of Judge James T. Kitchens Jr. Judge Kitchens had presided at the first trial and was set to preside at Fulks's second trial. In this motion, Fulks asserted that, in light of Judge Kitchens's comments from the 2009 bond hearing, he could not be fair or impartial if he presided over Fulks's second trial. The motion

3

contained excerpts from the 2009 bond-hearing transcript, which included the judge's remarks on the reversal of the first trial.

¶7. The trial court ultimately denied the motion, explaining that the court's remarks were not directed toward Fulks or his counsel. In its order, the court stated the following:

> The Court was instead commenting on its concern that the appellate court might not have received the complete record of proceedings in the trial court since the main reason for the reversal and remand was the trial court's failure to grant a continuance based on discovery issues though three continuances had already been granted and trial counsel had received full discovery.

¶8. The court dealt with the Frankses' testimony and Glenn's testimony at the preliminary hearing on May 23, 2011. With regard to the Frankses' testimony, Dr. Adam Smith, Sherry Franks's physician from Columbus, testified that Billy Joe Franks was in his eighties when he died. He also testified that Sherry Franks, then seventy-two, had suffered a stroke in February 2009, and had trouble with her memory and her ability to think rationally. Teresa Spencer, Sherry Franks's daughter, also testified that her mother had memory loss, and that, in her opinion, her mother would not be able to handle the stress of a new trial. Fulks presented testimony from his investigator, Irvin Bradley, who stated that Sherry Franks was ambulatory and able to respond to questions. Fulks also argued that Billy Joe Franks's testimony should be excluded, because his prior defense counsel did not have the opportunity to properly develop the cross-examination of Franks. The court found that both Billy Joe Franks and Sherry Franks were unavailable for purposes of Mississippi Rule of Evidence 804, and that they had been subject to thorough cross-examination, thereby ruling their testimony admissible for trial. *See* M.R.E. 804(b)(1).

¶9. The final phase of the hearing concerned Joshua Glenn's statement from Fulks's first

4

trial and a second statement that he had made after the trial. The hearing revealed that the first written statement was taken in November 2006, and it was provided in discovery in February 2007. Carrie Jourdan, a public defender and the attorney for Fulks in his first trial, testified that the first trial was continued several times because Glenn had changed his statement during trial. The court ultimately admitted both of Glenn's statements into evidence.

¶10. After the preliminary hearing, the court began voir dire of the jury. During voir dire, the State commented on how Glenn had pleaded guilty to accessory after the fact and had received a suspended sentence. No objection was made to the prosecutor's remarks.

¶11. The trial commenced on May 24, 2011, with Billy Joe Franks's doctor as the first witness. The State produced Glenn as a witness and introduced the former testimony of the Frankses into evidence. The State also introduced the former testimony of Fulks into evidence. All the former testimony was read to the jury from the first trial's transcript.

¶12. Glenn explained to the jury that he was on probation after pleading guilty to accessory after the fact to the armed-robbery charge. Glenn stated that, in July 2005, Fulks was living with him on Ben Morgan Drive. On July 18, 2005, Glenn and Fulks went to Demetric Lowe's apartment in Cypress Park in Glenn's father's car. At that time, Lowe was present and Glenn's girlfriend was on her way. Glenn stated that a woman named Leah Lafayette called his phone and asked for Fulks. Some time later, Lafayette arrived in a black Altima with two other women–Katherine Williams and Allegra Young. Glenn and Fulks got into the car with the three women, and they dropped off Williams's baby on their way to Young's grandmother's home. Glenn stated that Young was waving a gun in the air.

5

¶13.　Glenn testified that they pulled up to the house and that everyone got out of the car. According to Glenn, Fulks kicked in the door. Glenn said that he froze when the others ran into the Frankses' home, but then he ran into the woods. After he came out of the dark, congested, wooded area, he saw the three women with Fulks running from the side of the house. Lafayette apparently was carrying some sort of electrical device. Glenn drove them away from the crime scene, and Lafayette told him to pull over right after they left so that she could drive. The group then returned to Cypress Park Apartments. Glenn and Fulks went back to Glenn's home.

¶14.　Glenn stated that, the day following the robbery, he was afraid to tell law enforcement officials what had happened. He further explained that he had lied to police in his first statement because Fulks had told him to say that he and Fulks had remained in the car during the robbery. Glenn's revised statement was taken in September 2006. In the revised statement, Glenn said that Fulks had accompanied the women into the Frankses' home. On cross-examination, Fulks's attorney thoroughly questioned Glenn on his two different versions of the facts in his separate statements. He further questioned Glenn about his reason for changing his story to state that he and Fulks had not remained in the car. In doing so, he addressed the fact that Glenn had changed his story after he was allowed to plead guilty to accessory after the fact and received five years' probation.

¶15.　The State then put on the prior trial testimony of Sherry Franks, with Kim Hood, an employee of the district attorney, reading the part of Sherry Franks from the first trial's transcript. Jonathan Buckner, also an employee of the District Attorney, read the previous testimony of Billy Joe Franks.

¶16. The State then proceeded to admit the previous testimony of Fulks. The defense objected, claiming it was given no notice that Fulks's testimony would be used in the second trial. Ultimately, the court ruled that the evidence was admissible. Fulks's testimony revealed that, at the invitation of Glenn, he had accompanied Glenn and the three women to the Frankses' home. He stated that the women had gone inside while he and Glenn had remained in the vehicle. Fulks claimed that he did not want to be a part of anything that was going on and that he and Glenn were dropped off at his girlfriend's apartment. His earlier testimony also revealed that, on the evening after the incident, two detectives had questioned Glenn. Fulks stated that he had turned himself in at that time because, "if they're looking for [Glenn], they're going to be looking for me because we was in the car."

¶17. At the close of the State's case-in-chief, Fulks's motion for mistrial was denied, as was his motion for a directed verdict. After being advised concerning his right to testify, Fulks chose not to testify. The defense presented two witnesses to refute Fulks's charges. Ultimately, the jury found Fulks guilty on the charge of armed robbery and not guilty on the charge of aggravated assault. On June 15, 2011, Fulks filed his motion for judgment notwithstanding the verdict (JNOV) and a new trial. Judge Kitchens denied this motion on June 17, 2011. Fulks filed this appeal.

## ANALYSIS

### I. THE TRIAL JUDGE DID NOT ABUSE HIS JUDICIAL DISCRETION IN ALLOWING THE STATE TO INTRODUCE FULKS'S PRIOR TESTIMONY.

¶18. Fulks claims that the trial judge erred in allowing the State to introduce Fulks's testimony from his previous trial. At the second trial, Fulks's prior testimony was read into

7

evidence from the transcript of his first trial. Fulks says that his testimony is inadmissible because it was not disclosed during discovery and was coerced by the State.

¶19.    This Court consistently has held that "[t]he relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990). In ruling on Fulks's prior testimony, the judge stated that, in the first trial, he "had given [Fulks] time to make that decision, and he made the decision to testify." The judge also ruled that Fulks's prior testimony was admissible as a statement by a party-opponent.

¶20.    Mississippi Rule of Evidence 801(d)(2) states the following:

> 2) Admission by Party-Opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

M.R.E. 801(d)(2). In analyzing the law and facts of this case, Fulks's statement was admissible under Mississippi Rule of Evidence 801(d)(2) because the statement offered against him was "[Fulks's] own statement, in either an individual or a representative capacity." M.R.E. 801(d)(2). "The fact that the defendant does not take the stand at the second trial does not prevent the use of his testimony given at the former trial, if it would otherwise be admissible." *Edmonds v. United States*, 273 F.2d 108, 113 (D.C. Cir. 1959).

¶21. Fulks also argues that his statement was not an admission but, rather, a statement wrongfully compelled by the State. We disagree. "[F]ormer testimony, voluntarily given in a criminal trial, may be introduced in a subsequent trial upon remand or where the first trial ended in a mistrial." **Reed v. State**, 523 So. 2d 62, 67 (Miss. 1988) (citations omitted). At the first trial, Glenn willingly took the stand. Fulks was then informed of his right to remain silent and chose instead to testify. Fulks voluntarily took the stand, stating that he did not take part in the robbery at all, but instead remained inside the vehicle with Glenn. His testimony was not compelled by the State.

¶22. We have held that a defendant's testimony at a former trial that constitutes an admission under the laws of evidence may be presented in a later trial of the defendant. **Stringer v. State**, 491 So. 2d 837, 841 (Miss. 1986). Fulks's statement was "an admission, as that concept is understood in our law of evidence." **Id.** As such, that testimony "may be presented as evidence at a subsequent trial of that same defendant." **Id.** Therefore, we find that the judge did not abuse his discretion in allowing Fulks's former testimony into evidence.

## II. THE TRIAL JUDGE DID NOT COMMIT MANIFEST ERROR IN DENYING FULKS'S MOTION FOR RECUSAL.

¶23. Fulks claims that Judge Kitchens should have recused himself based on comments that he made during the course of the second trial. In his motion for recusal, Fulks included the following statements from the judge: "This – that – this opinion may very well be subject to a judicial performance complaint against the Supreme Court on that ground"; "That information was not supplied to the Supreme Court, and this case was reversed on a reason

9

that was, in fact, false"; and "But, yeah, this is -- that's the only reason this case was reversed, and you have seen the continuance orders where I continued it a number of times because the co-defendant was given as a witness against Mr. Fulks." In his order denying Fulks's motion for recusal, Judge Kitchens stated that the court's remarks were not directed at Fulks or his counsel. He clarified that the court instead was commenting on its concern that the Supreme Court may not have received the entire record from the first trial on appeal. Judge Kitchens further explained that he was commenting on the discovery issues from the first trial.

¶24. "The standard of review to which this Court is bound on the issue of recusal is manifest error." *Scott v. State*, 8 So. 3d 855, 859 (Miss. 2008) (citations omitted). This Court provided a detailed explanation of the standard for judicial recusal in *Dodson v. Singing River Hospital System*, 839 So. 2d 530, 532-33 (Miss. 2003):

> The rule concerning disqualification of a judge in effect at the trial of this case was Canon 3, subdivision C, of the Code of Judicial Conduct. It states, "'A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . .'" In conjunction with this canon, we have held consistently that the objective "'reasonable person knowing all of the circumstances'" is the proper standard by which we determine if a judge should have recused himself.

*Dodson*, 839 So. 2d at 532-33 (citations omitted). Therefore, "[i]t is clear that the standard for recusal is a reasonable person knowing all the circumstances. It is also clear that judges are presumed to be qualified and unbiased." *Id*. at 533.

¶25. The record does not produce a reasonable doubt as to the judge's impartiality. Judge Kitchens presided over both trials. At the first trial, Fulks was found guilty of armed robbery and aggravated assault. At the close of the second trial, the jury returned a verdict of guilty

10

of armed robbery but found Fulks was not guilty of aggravated assault. During the trial, Judge Kitchens granted several motions in favor of Fulks, including two motions for continuances. He also granted Fulks's request for additional time for his closing argument.

¶26. This Court explained in *Scott* that:

> The judge, while properly acting as gatekeeper, was the trier of fact as to admissibility of the evidence; however, the trial judge was not the ultimate trier of fact. The jury rendered the verdict based on substantial evidence, including [the defendant's] testimony. The presumption of impartiality remains with nothing to rebut it. The standard of manifest error is not met, and there is no showing that the trial judge's failure to recuse herself had any effect on the jury's deliberations or verdict . . . .

*Scott*, 8 So. 3d at 860. Fulks claims that Judge Kitchens was preoccupied with the Supreme Court's reversal of the first verdict and was determined to obtain a conviction in the second trial. Similar to the jury in *Scott*, Fulks's jury was not aware of Judge Kitchens's remarks from the pretrial hearing, at which the alleged prejudicial comments were made. Further, Fulks was acquitted of the second charge of aggravated assault in the second trial. Therefore, we find Fulks's argument regarding his conviction to be without merit.

¶27. "This Court entrusts our judges with great discretion. Our trial judges are confronted daily with evidence that would tend to make defendants appear more culpable than not. We presume that our trial judges are aptly equipped to handle these issues and apply the law without fear of undue prejudice." *Scott*, 8 So. 3d at 860 (citation omitted). We find that the judge did not commit manifest error and that Fulks did not overcome the presumption of impartiality.

III. **THE TRIAL COURT DID NOT ERR IN ALLOWING THE PROSECUTOR TO INFORM THE JURY THAT JOSHUA GLENN HAD ENTERED A PLEA OF GUILTY TO A CHARGE OF AIDING AND ABETTING AFTER THE**

11

FACT.

¶28. Fulks argues that plain error resulted from the prosecutor's comments to the jury regarding Glenn. During voir dire of the jury, the prosecutor stated that Glenn had entered a plea of guilty to accessory after the fact to armed robbery and assault, that he had received probation, and that he would testify at trial. Fulks made no objection to any of these remarks. In addition, on cross-examination, Fulks's attorney sought to impeach Glenn with this information. He also addressed Glenn's plea in his closing argument. He specifically attacked Glenn's credibility and his motive for testifying against Fulks.

¶29. Fulks argues that, although no objection was entered, the trial court should have recognized plain error. He refers to the Court's analysis in *Randall v. State*, 806 So. 2d 185 (Miss. 2001), to support his reasoning. However, the Court in *Randall* dealt with the issue of two defendants who were jointly indicted for the same offense but were separately tried. In *Randall*, the Court was concerned that the jury's knowledge that the codefendant had been tried and convicted for the same charge as the defendant inhibited the jury from being objective. *Id*. at 194. That is not the issue in this case. Glenn was never tried by a jury. Rather, the present case is analogous to the Court of Appeals' recent decision, *Williams v. State*, 81 So. 3d 1165 (Miss. Ct. App. 2011). In *Williams*, the trial court allowed into evidence the fact that the accessories after the fact had entered guilty pleas. *Id*. at 1170. The Court of Appeals held that this did *not* amount to plain error:

> Several factors undermine Williams's claim of reversible error in this case. First, the testimony in question was not objected to by Williams at trial. In general, issues that were not raised at trial are barred from our consideration on appeal. *Gunn v. State*, 56 So. 3d 568, 572 (Miss. 2011). However, Williams will still be entitled to relief if he can show that any of his complaints rise to

12

the level of plain error. ***Blanchard v. State***, 55 So. 3d 1074, 1077 (Miss. 2011). "Plain error exists where such error affects the defendant's substantive/fundamental rights, even though no objection was made at trial." ***Parker v. State***, 30 So. 3d 1222, 1227 (Miss. 2010).

*Id.* The court ultimately concluded that the "issue [was] procedurally barred because it was not raised below and does not rise to the level of plain error. Williams's codefendants were available for questioning, they testified about their involvement in the crime, and their factual basis for their pleas was different . . . ." *Id*. at 1171.

¶30.    "However, if there is a finding of plain error, a reviewing court may consider the issue regardless of the procedural bar. A review under the plain error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice." ***McGee v. State***, 953 So. 2d 211, 215 (Miss. 2007). The finding of plain error requires the trial court to deviate from a legal rule, that error be obvious, and that the error be prejudicial. *Id*. (citations omitted). The record reflects no plain error. Judge Kitchens did not deviate from a legal rule nor did the testimony prejudice the outcome of the trial. Therefore, the trial court did not err in allowing the prosecutor to comment on Glenn's plea and sentence.

## IV.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN RULING THAT SHERRY FRANKS WAS "UNAVAILABLE" FOR TRIAL.

¶31.    The trial court, at the request of the State, declared victim Sherry Franks "unavailable" for trial. Fulks argues that the trial court erred when it allowed the State to admit Franks's former testimony into evidence.

¶32.    "The foremost requirement of the former testimony exception to the hearsay rule is that the witness or declarant be unavailable." ***Parker v. State***, 514 So. 2d 767, 773 (Miss.

13

1986). Further, "[t]he party offering the former testimony bears the burden of proving the unavailability of the witness, and the determination of unavailability is a judicial exercise reviewable on appeal only for abuse of discretion." *De La Beckwith v. State*, 707 So. 2d 547, 586 (Miss. 1997).

¶33.    Mississippi Rule of Evidence 804(a)(4) states that a witness may be declared unavailable when a witness "[i]s unable to be present to testify at the hearing because of death or then existing physical or mental illness or infirmity. . . ." M.R.E. 804 (a)(4). During the pretrial-motions hearing, the State produced a medical witness and a caregiver to illustrate Franks's mental impairments and loss of memory. Judge Kitchens heard from Dr. Adam Smith, who testified that Sherry Franks was seventy-two years old and had suffered a stroke in February 2009. Dr. Smith specifically stated that Franks suffered trouble with her memory and her cognitive ability. When asked about Franks's mental abilities, Dr. Smith replied that, "[t]he stroke, as I've said, has effected [sic] her memory and her ability, you know, to think clearly in certain situations." The State also presented testimony from Teresa Spencer, Franks's daughter, who testified that her mother had suffered a stroke and would often "get things confused." Spencer stated that, in her opinion, her mother would not be able to handle the stress of another trial. Fulks rebutted this testimony with Investigator Irvin Bradley, who stated that, when he spoke to Franks, she was able to respond to questions.

¶34.    After hearing the testimony from Dr. Smith, Teresa Spencer, and Investigator Bradley, Judge Kitchens determined that Franks was unavailable pursuant to Mississippi Rule 804. The judge relied on the Court's decision in *Earl v. State*, 672 So. 2d 1240 (Miss. 1996), in his ruling. The Court in *Earl* faced the issue of whether a witness, who was unable to attend

14

the trial due to a doctor's appointment, had an "existing physical illness" and could be declared "unavailable" for purposes of Mississippi Rule of Evidence 804(a)(4), when there was no medical witness or affidavit to support the claim. *Id*. at 1241. While the judge in *Earl* allowed similar testimony into evidence without medical testimony, Judge Kitchens heard medical testimony and stated that it was not an issue in the present case.

¶35.    It is uncontested that Sherry Franks had suffered a stroke. The judge based his ruling on the testimony from Franks's doctor, along with testimony from her daughter, Teresa Spencer, explaining how the stroke had affected Franks's memory and ability to think clearly.  Therefore, the judge did not abuse his judicial discretion in finding that the State had met its burden of proof for Franks's "existing physical or mental infirmity." M.R.E. 804.

**CONCLUSION**

¶36.    We find that Judge Kitchens did not abuse his discretion in allowing into evidence the earlier testimony of Fulks and Sherry Franks. We also find that the trial court did not err in denying Fulks's motion for recusal. We find that the court did not err in allowing the prosecutor to comment on Glenn's plea and sentencing. Therefore, we affirm Fulks's conviction and sentence.

¶37.    **AFFIRMED**.

        **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR.  KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.; WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR AND COLEMAN, JJ., JOIN IN PART.**

        **KITCHENS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶38.    While I agree that it was not error for the trial court to allow Fulks's testimony from

15

his first trial to be adduced by the State during its case-in-chief during the instant trial, I do not subscribe to the majority's analysis in that regard. I also agree that there is no reversible error on the recusal issue, but in reaching this conclusion, the majority tends to confuse the appellate standard of review. For these reasons, I concur in result only and offer the reasoning which led me to conclude that the defendant's testimony from the first trial was admissible in the second.

¶39. On appeal, Fulks argues that his previous testimony was inadmissible because he was neither listed as a witness to be called by the State nor was the transcript of his testimony listed as an exhibit by the State. He also argues that his statement was self-serving, and therefore was not an admission of a party opponent which would render it admissible under Mississippi Rule of Evidence 801(d)(2)(A). The majority does not address the potential discovery violation by the State, so I respectfully offer the following analysis of that issue.

¶40. Fulks first argues that his prior testimony was inadmissible because it was not disclosed by the State during pretrial discovery. He contends that he should have been listed as a witness to be called by the State and that the State's failure so to list him resulted in a trial by ambush. However, when informed, during the trial, of the State's intention to present his testimony from the first trial, Fulks did not ask for a continuance. "When a prosecutor reveals evidence on the eve of trial that should have been disclosed earlier, . . . the only effective remedy is a continuance." *Fulks v. State*, 18 So. 3d 803, 805 (Miss. 2009). A defendant who claims surprise because of undisclosed evidence must request a continuance to review the evidence and determine whether it is prejudicial. *McCullough v. State*, 750 So. 2d 1212, 1217 (Miss. 1999). "Should the defendant fail to request a continuance, he has

16

waived the issue." *Id.* Fulks objected to the admission of the testimony, but he failed to request a continuance following the trial court's overruling his objection. Accordingly, the issue is procedurally barred.

¶41. Fulks also argues that his statement was wrongfully compelled by the State. He claims that the belated change of Joshua Glenn's testimony in the first trial compelled him to testify in his defense. At the first trial, Glenn took the witness stand as a State's witness. Fulks objected to Glenn's being allowed to testify for the prosecution, claiming surprise and trial by ambush due to the untimely disclosure by the State of the complete change in substance of Glenn's testimony. When that objection was overruled, he requested a continuance, which also was denied. After the State had rested, Fulks took the stand in his own behalf, after being informed by the trial court that he had a right not to testify. Although Fulks now claims that his testimony during the first trial was involuntarily given, the record of that trial does not show his having made that contention at the time, nor does it lend any support to his present contention.[1] To the contrary, there is every indication that Fulks made an informed and voluntary decision to testify during his first trial.

¶42. "[F]ormer testimony, voluntarily given in a criminal trial, may be introduced in a later trial upon remand." *Reed v. State*, 523 So. 2d 62, 67 (Miss. 1988) (citations omitted). This Court has held that the transcript of testimony given in a trial that resulted in a mistrial was admissible in a subsequent trial of the same case "either as part of the State's case in chief

---

[1]The trial court in the second trial read aloud from the transcript of the first trial in which the same judge had informed Fulks of his right not to testify, and Fulks had made the decision, while attended by counsel, to waive that right.

17

or rebuttal, as an admission of the defendant." *Arrington v. State*, 411 So. 2d 779, 780 (Miss. 1982). *See also McMasters v. State*, 83 Miss. 1, 35 So. 302 (Miss. 1903) ("It is well-settled law in this state that, where a defendant chooses to take the witness stand and testify in his own behalf, in any court, his statement upon that occasion can be used against him upon any future trial of the cause.") In *Stringer v. State*, 491 So. 2d 837, 841 (Miss. 1986), this Court, in analyzing whether a defendant's prior testimony from a trial in which he was a witness and not a party was admissible, stated that "*Arrington* and *Mackmasters* [sic] correctly hold that so much of a defendant's testimony at a former trial which constitutes an admission . . . may be presented as evidence at a subsequent trial of that same defendant." Fulks voluntarily took the stand, after being warned of his right not to do so. His testimony was not compelled by the State, even though Fulks and/or his attorney may have believed that Glenn's testimony for the prosecution had made it desirable or even expedient for Fulks to try to refute it by his own testimony.

¶43. Finally, Fulks contends that his statement was self-serving, not an admission, and so was inadmissible against him under this Court's holding in *Stringer*, 491 So. 2d at 841. There, the Court held that "the trial court committed reversible error when it received into evidence portions of the prior testimony of . . . Stringer which could not fairly be characterized as admissions. . . ." *Id.* The State claims that Fulks's testimony at the first trial was an admission. An admission is a "statement[] by a party . . . of the existence of a fact which is relevant to the cause of his adversary." *Black's Law Dictionary* 44 (5th ed. 1979). Fulks testified at the first trial that he was in the car in front of the Franks house. Both he and Glenn testified that Glenn remained outside of the house. The Frankses testified that a male

18

definitely was in the house when they were attacked. Fulks's statement that he and Glenn had remained in the car, combined with Glenn's statement that he had stayed in the car while Fulks went in the house and the Frankses' testimony that a man had been in the house, led to the inference argued by the prosecutor that the only male who *could* have been in the house, other than Mr. Franks, was Tomarcus Fulks. Therefore, according to the State, Fulks's statement was "an admission as that concept is understood in our law of evidence[.]" *Stringer*, 491 So. 2d at 841. As such, that testimony "may be presented as evidence at a subsequent trial of that same defendant." *Id.*

¶44. Fulks contends that the statement was self-serving, as he was professing his innocence. The only part of his testimony which allows an incriminating inference is his statement that both he and Glenn were in the car in front of the Franks house, and they both remained in the vehicle. In *Stringer*, this Court held that only prior testimony that fits within the definition of an admission may be used as evidence against the accused in a subsequent trial. *Stringer*, 491 So. 2d at 841. Therefore, according to Fulks, the part of his testimony that did not constitute an admission was inadmissible against him. Again, to preserve the issue for appeal, Fulks was obligated to object, and, if his objection was unsuccessful, to request a continuance. *McCullough*, 750 So. 2d at 1217 (Miss. 1999). "Should the defendant fail to request a continuance, he has waived the issue." *Id.* Because Fulks failed to request a continuance at that juncture, the issue is procedurally barred, even though parts of his testimony that cannot be classified as admissions were admitted into evidence.

¶45. As for Fulks's claim that the trial judge should have recused himself, the majority holds that "[t]he record does not produce a reasonable doubt as to the judge's impartiality."

19

Maj. Op. ¶25. Accusing the justices of this Court of judicial misconduct based on our appellate review and unanimous reversal of Fulks's first case should raise at least *some* doubt about the judge's impartiality in the retrial of the same case. But, that is not the standard we employ on appeal. "When a judge is not disqualified under the constitutional or statutory provisions the decision is left up to each individual judge and is subject to review only in a case of manifest abuse of discretion." ***Jones v State***, 841 So. 2d 115, 135 (Miss. 2003) (citing ***Buchanan v. Buchanan***, 587 So. 2d 892, 895 (Miss. 1991)). Judges are presumed to be impartial, and in determining whether an appellant has overcome the presumption of impartiality, "the reviewing court must consider the trial as a whole and examine every ruling to determine if those rulings were prejudicial to the complaining party." ***Jones***, 841 So. 2d at 135 (citing ***Hunter v. State***, 684 So. 2d 625, 630-31 (Miss. 1996)). Fulks claims that the trial judge had an interest in the outcome based on his comments during a pretrial hearing. *See* Miss. Const. art. 6, §165 ("No judge of any court shall preside on the trial of any cause, . . . where he may be interested in the same . . . ."); Miss. Code of Judicial Conduct Canon 3(C)(1)(c) (same); Miss. Code Ann. § 9-1-11 (Rev. 2002) (same). However, he does not point to any of the trial judge's rulings that were prejudicial and could be said to have been motivated by this alleged bias. Without identifying some particular prejudice, Fulks cannot overcome the presumption of impartiality, and we cannot find that the trial court committed manifest error by denying Fulks's motion for recusal.

**KING, J., JOINS THIS OPINION. WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR AND COLEMAN, JJ., JOIN THIS OPINION IN PART.**

20