# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-01172-SCT

*LAQUNN GARY a/k/a LAGUNN GARY a/k/a*
*LAQUNN SHAROD GARY*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 05/22/2014
TRIAL JUDGE: HON. JEFF WEILL, SR.
COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF THE STATE PUBLIC DEFENDER
 BY: BENJAMIN ALLEN SUBER
  GEORGE T. HOLMES
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
 BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY: ROBERT SHULER SMITH
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 02/08/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Laqunn Gary carjacked Vizavian Trent Darby at gunpoint.  When Darby refused to get out of the car, Gary shot Darby in the head, killing him.  At Gary's trial, the jury watched a video of Gary confessing to killing Darby.  The jury found Gary guilty of capital murder.  He was sentenced to life in prison without parole.

¶2. On appeal, Gary challenges the admission of his confession.  Before trial, Gary had

filed a motion to suppress his confession, claiming he had not voluntarily waived his *Miranda* rights.[1] The trial court ruled the confession was voluntary. But it reached this conclusion without holding a full suppression hearing in which the State carried the burden to prove voluntariness. Because this violated Gary's due-process rights, we remanded this case to the trial court to conduct a suppression hearing.[2] At this hearing, the State presented one of the detectives who was present when Gary confessed. She testified Gary had not been coerced or promised any reward. Instead, Gary signed the *Miranda* waiver and answered the detectives' questions voluntarily. Based on her testimony, the signed *Miranda* statement, and Gary's demeanor during the video confession, the trial judge determined Gary's confession was voluntary.

¶3. To this decision, we apply the high standard of manifest error.[3] Because the evidence supports that Gary's confession was voluntary, we affirm the trial court's denial of the motion to suppress. We also find no merit to Gary's claims that the evidence was insufficient, the verdict was against the overwhelming weight of the evidence, or reversal is warranted based on cumulative error.

¶4. We thus affirm Gary's capital murder conviction and sentence of life without parole.

**Background Facts and Procedural History**

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (requiring that, prior to a custodial interrogation, the person be warned he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed).

[2] *Gary v. State*, 2016 WL 7014026 (Miss. Dec. 1, 2016) (*Gary I*).

[3] *Scott v. State*, 8 So. 3d 855, 862 (Miss. 2008).

2

## I.  Investigation

¶5.    On February 11, 2012, Jackson police officers found Darby's body lying in the grass at the corner of Carter Avenue and Markham Street.  He had been shot in the head.  Darby had last been seen alive driving away from his house in a white Dodge Charger his mother had rented while her car was in the shop.[4]  Two days later, police discovered the Charger abandoned nearby.  The windshield was cracked.  Forensic analysis linked the crack to impact from a projectile from the inside of the vehicle.  The crime scene investigator's on-site testing also revealed the presence of blood not visible to the naked eye.  Later DNA testing showed the blood in the car belonged to Darby.

¶6.    The police picked up Gary as a suspect on February 14, 2012.  Detective Eric Smith and his partner Detective Patricia Wilder were assigned the case.  After advising Gary of his *Miranda* rights and obtaining a written waiver, they questioned him.  Gary's interview was recorded by a video camera.

¶7.    At first, Gary claimed he had been walking down the street when Darby stopped the car in front of him.  Gary said he then saw his friend Jamiria Travis jump out of the car and run across the railroad tracks.  Gary claimed Darby then drew a gun on him.  Gary said it was a "him or me" situation.  So Gary pulled his pistol and shot him.  Gary said he did not know Darby and could not explain why Darby would jump out of his car and pull a gun on him.

¶8.    The detectives then explained they had already talked to Travis, and Gary's story was inconsistent with hers.  Plus, forensic evidence showed Darby had been shot *inside* the car.

---

[4] The rental agreement also authorized Darby to drive the vehicle.

Gary then confessed to what actually happened. Travis had told Gary that Darby had a car and some money. The plan was to rob him. Travis called Darby to come pick her up at Gary's house and give her a ride. When Darby arrived, Travis got in the front seat and Gary in the back. Gary had a gun, and apparently so did Darby. When Darby refused to get out of the car, Gary shot Darby in the back of the head. Gary and Travis then drug Darby's body out of the car. Gary drove Travis to South Jackson. Then he hid both his and Darby's guns underneath a church and dumped the car.

¶9.     After the interrogation, Gary led Detective Smith and Deputy Chief Brent Winstead to the hidden guns. Gary also turned in the clothes he had been wearing the day he shot Darby, which he happened to be still wearing. His shirt was tested by the Mississippi Crime Lab, which found traces of Darby's blood and DNA.

¶10.    Gary and Travis were indicted for capital murder, with robbery as the underlying felony. *See* Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014).[5]

## II.    Motion to Suppress

¶11.    Only Gary was tried. Before trial, Gary's counsel moved to suppress the video confession, along with Gary's signed statement. Gary's counsel argued Gary had only been seventeen years old in February 2012—too young to voluntarily waive his constitutional rights.

¶12.    The State's position was that Gary's confession was voluntary. But it could not call Detective Smith to verify this, because Detective Smith had been shot and killed while

---

[5] The indictment also included a gun enhancement for "having used a firearm during the commission of a felony" in violation of Mississippi Code Section 97-37-37.

4

interviewing a suspect in an unrelated case. The State also had trouble getting Detective Wilder to testify. She had witnessed her partner's murder and purportedly was suffering from post-traumatic stress disorder (PTSD). The State filed a pretrial motion to determine her availability as a witness. Detective Wilder responded with a motion to quash her subpoena. Four days before trial, the trial court heard both motions. At this hearing, Detective Wilder's therapist testified about Wilder's PTSD and the potential harmful impact testifying might have on her.

¶13. Both the State and Gary informed the court that Detective Wilder's potential unavailability would impact Gary's suppression hearing, since the State intended to call Detective Wilder to prove Gary's confession was voluntary and to authenticate the video of the confession. Gary's counsel reminded the court about Gary's pending suppression motion, urging an age-based challenge to the voluntariness of his *Miranda* waiver. At this point, a disagreement arose about Gary's true age. While Gary's counsel asserted he was seventeen when he confessed, the State insisted Gary was in fact eighteen, based on his birth date. Though the current hearing was about Wilder's availability to testify—not the admissibility of Gary's confession—Gary's counsel offered to put Gary on the stand for the limited purpose of confirming the year he was born.

¶14. When Gary testified he was born in November 1994, which would have made him seventeen in February 2012, the State requested they be allowed to cross-examine Gary. The State showed Gary the *Miranda* waiver form and written statement, which listed his date of birth. Gary confirmed that he could read and write and that it was his signature on two of the

pages. But he insisted the officers never asked him about his birthday. At this point, the State asked to show the video confession, suggesting that within the first thirty seconds of the video statement, Gary told Detective Smith and Detective Wilder he was born in 1993—making him eighteen, not seventeen. Over Gary's objection, the trial court permitted several minutes of the video to be played—up to when Gary was asked about his date of birth. Gary confirmed that he was the person in the video, that the video depicted him being interviewed by the two detectives, and that he had told the detectives he was born in 1993.

¶15. After Gary's brief testimony, the hearing shifted back to the issue of Detective Wilder's availability to testify. The hearing ended with the trial court taking the issue of Detective Wilder's availability under advisement.

¶16. On the morning of trial, the court announced that it had deemed Detective Wilder an unavailable witness. The court also confirmed it was denying Gary's motion to suppress his written statement and video-recorded confession. Gary's counsel spoke up, arguing Gary had not been heard on his motion to suppress. And though the court agreed with Gary's counsel that Gary "was not fully heard on his motions" to suppress the written statement and video-recorded confession, the court still ruled his confession was voluntary.

¶17. During trial, Gary's video confession and *Miranda* waiver was admitted through Deputy Chief Winstead, who was present when Gary was brought in for questioning, though not in the interrogation room.[6] The jury found Gary guilty of capital murder. He was sentenced to life imprisonment without parole.

---

[6] The jury also heard from other investigating officers, Darby's mother, and several forensic examiners.

### III. Appeal

¶18. Gary appealed, raising four issues:

(1) The trial court erred by not suppressing the interrogation video;

(2) The evidence was insufficient to convict Gary of capital murder instead of manslaughter;

(3) The trial court erred in denying Gary's motion for a new trial because the verdict was against the overwhelming weight of the evidence; and

(4) There was cumulative error that deprived Gary of his right to a fundamentally fair and impartial trial.

¶19. In *Gary I*, we addressed the first issue only. *Gary v. State*, 2016 WL 7014026 (Miss. Dec. 1, 2016). Because Gary had a due-process right to a suppression hearing, which the trial court acknowledged Gary had not actually been given, we remanded this issue to the trial court to conduct a suppression hearing.[7] *Id.*

### IV. Hearing on Remand

¶20. Complying with our mandate, the trial court held the suppression hearing on May 4, 2017. To meet its burden to prove the confession was voluntary, the State called Detective Wilder.[8] She testified she had been present when Gary was read his rights and signed the

---

[7] *See **Jackson v. Denno**, 378 U.S. 368, 394, 84 S. Ct. 1774, 1790, 12 L. Ed. 2d 908 (1964) (remanding a criminal case to the state court to conduct a constitutionally adequate suppression hearing, because, if after a proper suppression hearing, the confession is found to be voluntary and admissible, there is "no constitutional necessity at that point for proceeding with a new trial"); *see also **Conerly v. State**, 760 So. 2d 737, 742 (Miss. 2000) (remanding a burglary case to the trial court for a probable-cause hearing, because no probable-cause determination had been made before admitting evidence found during the defendant's arrest).

[8] Detective Wilder had since left the Jackson Police Department and become a deputy with the Hinds County Sheriff's Office. At the suppression hearing, she identified herself

*Miranda* waiver. She confirmed Gary had knowingly and voluntarily waived his rights.

¶21. Gary then testified. In his pre-trial motion to suppress, he had claimed he was only seventeen and too young to intelligently waive his constitutional rights. On remand at the suppression hearing, he abandoned this claim. Instead, he insisted he had been high on marijuana when the police picked him up on February 14, 2012, and that he was never read his *Miranda* rights. He also claimed Detective Smith had reassured him he was "just investigating the case" and would let him go after the interview.

¶22. Detective Wilder testified that she was not aware of any private conversation between Detective Smith and Gary. And neither she nor Detective Smith made any threats or promises to Gary. Further, Gary had not appeared drunk or intoxicated in any way. If so, she and her partner would not have interviewed him.

¶23. The trial court found the State had met its burden to prove Gary's confession was voluntary. And Gary had failed to rebut this. Gary's assertion that he had been high was contradicted by Detective Wilder's testimony and by Gary's demeanor on the video. So was his assertion that he had not been read his *Miranda* rights. And Gary's claim Detective Smith said he was "just investigating the case" could not be construed as an offer or reward that induced Gary's confession.

¶24. Having determined Gary's confession was voluntarily and admissible, the trial court denied Gary's motion to suppress. The trial court then filed its order with this Court for our consideration. We now take up all four issues raised in Gary's appeal, starting with the

as Patricia Wilder Williams. But for consistency, we continue to refer to her as "Detective Wilder."

motion to suppress.

## Discussion

### I.     Motion to Suppress

¶25.    With our mandate in *Gary I* went Gary's initial argument why the trial court erred in not granting his motion to suppress. Gary had argued the trial court should have not relied on *his* testimony at the pretrial hearing to confirm that his confession was voluntary. Instead, the State should have been required to make a prima facie case that the confession was voluntarily made without any threats, coercion, or offer of reward.

¶26.    We agreed. Because he challenged the voluntariness of his confession, Gary had "a due process right to a reliable determination that the confession was in fact voluntarily given," which is protected by a hearing outside the presence of the jury. *Gary I*, 2016 WL 7014026, at *3 (quoting *Cox v. State*, 586 So. 2d 761, 763 (Miss. 1991)). At this hearing, it is the State—not the defendant—who bears the burden to prove beyond a reasonable doubt that the confession was voluntarily made. "And only after the State makes its prima facie case does the defendant have to put on evidence of coercion or involuntariness." *Id.* (citing *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966)). Because the trial court had not required the State to make a prima facie showing that Gary's confession was voluntary, we remanded this issue to the trial court to hold a suppression hearing to decide if Gary's confession had been in fact admissible. *Id.* (citing *Jackson v. Denno*, 378 U.S. 368, 394, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *Conerly v. State*, 760 So. 2d 737, 742 (Miss. 2000).

¶27.    The trial court followed our mandate. At the suppression hearing, the burden was

9

placed squarely on the State to prove the confession had been voluntary. *See Agee*, 183 So. 2d at 673. The State met this burden through the testimony of Detective Wilder, who personally witnessed Gary being read his *Miranda* rights and signing the *Miranda* waiver form. Detective Wilder testified Gary had not been threatened, coerced, or offered any reward for testifying. And he had not appeared to be under the influence.

¶28. In his supplemental brief, filed after the suppression hearing, Gary argues the trial court erred "by limiting the cross-examination" of Detective Wilder. Gary cites *Walley v. State*, 240 Miss. 136, 126 So. 2d 534, 535 (1961), as support for why he had a right to cross-examine Detective Wilder about her mental health, perception, memory, and trustworthiness. He claims the trial court limited this right because, though it gave counsel "a little latitude" on questions about her mental condition, it forbade "an evaluation into her mental and physical condition." But the hearing transcript does not support this claim. The State did object to questions about Detective Wilder's medical treatment in 2014—the time of Gary's trial—claiming irrelevance. But the trial court *overruled* the objection. The judge told Gary's counsel, "I'm going to give you a little more room on this, Counsel. But you need to make it relevant. And a fishing expedition into her mental and physical concerns are approaching irrelevant." At this point, counsel proceeded with pointed questions about Detective Wilder's PTSD, which she answered. Counsel then moved on to another topic on his own volition. At no point did counsel ask a question about Detective Wilder's mental or physical health to which the trial court sustained an objection. And Gary has failed to show what questions his counsel would have asked but for the trial court's prohibition. So Gary's

assertion that the trial court somehow limited his cross-examination of Detective Wilder is without merit.

¶29.     "The trial judge is the fact-finder during a suppression hearing[.]" **Butler v. State**, 102 So. 3d 260, 270 (Miss. 2012).  In this role, "the judge must consider the totality of the circumstances to determine if a defendant intelligently, knowingly, and voluntarily waived his **Miranda** rights." **Scott v. State**, 8 So. 3d 855, 862 (Miss. 2008).   And if a judge makes such a determination and denies a motion to suppress a confession, this Court can reverse only based on "manifest error."  **Id.** at 861.  "The standard of manifest error is high, and this Court cannot reverse unless the trial judge's ruling has gone against the substantial weight of the evidence."  **Id.**

¶30.     Here, the judge considered both Detective Wilder's and Gary's testimony, the signed **Miranda** waiver, and the video confession to reach the ultimate conclusion that Gary's confession was voluntary.  Because "the evidence supports the trial judge's denial to suppress the confession," we "cannot reverse."  **Id.** at 862.

### II.     Motion for Judgment Notwithstanding the Verdict

¶31.     We now turn to the other issues Gary raised that were not addressed in **Gary I**.

¶32.     Gary next argues the trial judge erred by not granting his posttrial motion for a judgment notwithstanding the verdict.  Gary claims the evidence was insufficient to convict him of capital murder.  At most, he argues, the State proved he committed manslaughter.

¶33.     Gary was indicted and convicted of violating Section 97-3-19(2)(e).  Under this provision—

> The killing of a human being without the authority of law by any means or in any manner shall be capital murder . . . [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies[.]

Miss. Code Ann. § 97-3-19(2)(e). The underlying crime in this case was robbery. So the State's burden was to prove beyond a reasonable doubt that Gary killed Darby without authority of law while engaged in the commission of a robbery or in the attempt to commit a robbery.

¶34. Gary argues the State failed to meet this burden because it did not prove each element of robbery. "Robbery has three essential elements: (1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence.'" *Veazy v. State*, 113 So. 3d 1226, 1229 (Miss. 2013) (quoting *Croft v. State*, 992 So. 2d 1151, 1157 (Miss. 2008)). And as Gary sees it, the intent element was lacking because the State did not prove Gary intended to take any of Darby's property. At most, the evidence established Gary intended to forcibly take the car, which he claims did not belong to Darby since his mother had rented it. But we have made clear "that robbery relates to *possession* of property, not to title." *Id.* at 1232 (emphasis added). And, here, it was undisputed that Darby was in lawful possession of the Dodge Charger when Gary jumped in the backseat to steal it. *See Bullock v. State*, 391 So. 2d 601, 606-09 (Miss. 1980) (affirming capital-murder conviction, with underlying felony of robbery of a vehicle, where it was undisputed the victim was in lawful possession of the

12

vehicle when the defendant carjacked and murdered him).

¶35.    When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005). In the video, Gary admitted the plan was to steal Darby's car. Travis called Darby to come pick her and Gary up. And Gary brought his gun with him to forcibly take the car from Darby's personal possession. When Darby resisted, Gary said he shot Darby in the back of the head, killing him. Viewing this evidence in the light most favorable to the State, a rational juror could have certainly found beyond a reasonable doubt that all the elements of capital murder—including all the elements of the underlying crime of robbery—had been proven.

¶36.    Thus, the trial court did not err in denying Gary's motion for a judgment notwithstanding the verdict.

### III.    Weight of the Evidence

¶37.    Alternatively, Gary argues his posttrial motion for a new trial should have been granted because the jury's verdict was contrary to the overwhelming weight of the evidence.

¶38.    A motion for a new trial based on the weight of the evidence falls squarely within the trial court's discretion. *Little v. State*, 2017 WL 4546740, at *4 (Miss. Oct. 12, 2017). When reviewing the denial of such motion, "we weigh the evidence in the light most favorable to the verdict, 'only disturbing a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id.*

13

(quoting *Lindsay v. State*, 212 So. 3d 44, 45 (Miss. 2017)).

¶39. Here, the overwhelming weight of the evidence is consistent with, not contrary to, the jury's guilty verdict. Not only did Gary confess, but his confession was consistent with the other evidence presented. Forensic examination proved Darby was shot in the car—just as Gary said. Darby's blood was found on Gary's shirt, which Gary admitted he had been wearing the day he shot Darby. And Gary himself led the police to the murder weapons.

¶40. Still, Gary asserts there were "far too many questions left unanswered to convict [him] of capital murder." Specifically, Gary points to the fact analysts only found one spot of Darby's blood on Gary's shirt, though Gary claimed he dragged Darby's body out of the car. And why, if he had murdered Darby, would he still be wearing the same shirt three days later? Gary also suggests the State avoided bringing up Travis, perhaps to downplay that Gary had a lesser role in the murder.

¶41. But resolving factual questions is precisely why we have juries. *See Evans v. State*, 159 Miss. 561, 566, 132 So. 563, 564 (1931) ("[J]uries are impaneled for the very purpose of passing upon such questions of disputed fact[.]"). And this Court will not disturb a jury's verdict when substantial evidence supports it. *Bridges v. State*, 716 So. 2d 614, 617 (Miss. 1998).

¶42. We find the jury was presented ample evidence Gary committed the murder. Thus, the trial court did not abuse its discretion in denying Gary's motion for a new trial.

### IV.    Cumulative Error

¶43. Finally, Gary claims cumulative error warrants a new trial. But "where there is no

14

reversible error in any part, there is no reversible error to the whole." ***Gray v. State***, 887 So. 2d 158, 172 (Miss. 2004).

¶44. The one error we found—the trial court's failure to hold a formal suppression hearing, in which the State and not Gary was required to prove the voluntariness of the confession—was remedied through ordering a suppression hearing in ***Gary I***. At this hearing, the trial court found Gary's confession was voluntary and admissible. *See **Jackson***, 378 U.S. at 394, 84 S. Ct. at 1790 (holding that, if after a proper suppression hearing the confession is found to be voluntary and admissible, there is "no constitutional necessity at that point for proceeding with a new trial"). So Gary is not entitled to a new trial on this claim.

¶45. Because Gary has pointed to no other errors, "there can be no cumulative effect and no adverse impact upon his constitutional right to fair trial." ***Id.*** at 172-73.

¶46. We therefore affirm Gary's conviction of capital murder and sentence to life in prison without parole.

¶47. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**