# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01005-COA

**LINDSEY ARLETTE RASBEERY A/K/A**            **APPELLANT**
**LINDSEY ARLETTE RASBERRY**

**v.**

**STATE OF MISSISSIPPI**            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2024 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES WILLIAM BRAND |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/16/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A truck with four passengers was searched by law enforcement at a traffic checkpoint. The deputies found methamphetamine and a handgun in the purse of one of the passengers. She was later found guilty of possession of the meth with an accompanying firearm enhancement. On appeal, she claims there was not sufficient proof to support her conviction for constructive possession, that the verdict was against the weight of the evidence, and that the trial court should have suppressed her roadside statements. Finding no error, we affirm.

## FACTS

¶2. While conducting a safety checkpoint on behalf of the Neshoba County Sheriff's

Department one afternoon in October 2022, Investigator Patrick Burt and Deputy Matthew Winstead noticed a truck attempt to avoid the checkpoint by pulling into a nearby driveway. Quickly realizing the driveway was gated off, the driver of the truck had to "back up into the highway and then proceed down to [the] check point."

¶3. When the truck approached the checkpoint, Deputy Winstead "asked the male driver for his license," but "he told [the deputy] he didn't have one." From there, the deputy directed the driver to "pull over" so he could run his Social Security number. The driver was soon identified as Johnny Sublette. Discovering that Sublette had an active warrant in Lauderdale County, Deputy Winstead asked him to "step out of the truck."

¶4. Three passengers remained inside the truck—"a female and a male up front and a male . . . sitting in the back seat." The female passenger was sitting in the front middle seat and was identified as Lindsey Rasbeery. While Deputy Winstead spoke with Sublette, Investigator Burt oversaw the remaining passengers and noticed that Rasbeery "was extremely nervous" and kept "brushing her hair real frantically." After observing that Rasbeery "kept reaching frantically when she saw [the investigator] in the window," Investigator Burt "ask[ed] everybody to step out of the vehicle" because she was "making [him] extremely nervous," and he "knew something was wrong."

¶5. Based on his observations, the investigator "believed something had to have been illegal in th[e] vehicle" and asked Sublette for permission to search his truck. Sublette agreed. While "looking inside the vehicle," Investigator Burt "notice[d] a glass cylinder pipe

2

that had been used in a purse" and was "sitting on the passenger floor board." Directly underneath the pipe, he "noticed a baggy" sitting inside the purse. Inside the baggy, the investigator observed "a crystallized substance" which he "believed to be crystal methamphetamine." But once he picked up the baggy, he "noticed there [were] several other baggies" under the first. Investigator Burt later discovered a total of twenty baggies in the purse.

¶6.     After ensuring he had the attention of all four passengers, the investigator then issued them *Miranda* warnings. Rasbeery acknowledged she understood those rights and agreed to speak with Investigator Burt. Although he and Rasbeery "didn't speak very much at all about the case," when the investigator asked whether she had any illegal items on her person, Rasbeery confirmed she did, and removed "three glass cylinder pipes . . . from her chest area inside the bra." She further acknowledged the purse found with the pipe on top "was her purse."

¶7.     Deputy Winstead also searched Sublette's truck, where he "discovered a handgun in the purse that was [o]n the floorboard of the truck." When the deputy confronted Rasbeery about who owned the gun, she "stated it was Mr. Chisolm's gun." However, she acknowledged that she owned the purse. Rasbeery was subsequently indicted for possession of methamphetamine with an accompanying firearm enhancement.

**PROCEDURAL HISTORY**

¶8.     Prior to trial, the defense filed a written motion to suppress "evidence gained through

3

the un-Mirandized statements of the Defendant at the time of the arrest," specifically alleging that particular roadside statements made by Rasbeery were inadmissible. During trial and outside the presence of the jury, the trial court held a suppression hearing to determine whether Rasbeery's statements were made voluntarily.[1]

*State Witnesses for Motion to Suppress*

¶9.    The State called Investigator Burt to the stand and elicited the following testimony:

| The State: | You testified you advised [Rasbeery] of her right to remain silent. Is it your testimony you advised them of all their rights? |
|---|---|
| Investigator Burt: | Correct. All at one time. I made sure each individual -- had their attention, and I read them their rights all at the same time. |
| The State: | In addition to the right to remain silent, did you advise them that any statements they made might be used against them? |
| Investigator Burt: | Correct. |
| The State: | Did you advise them they had a right to speak to an attorney and have that attorney present during questioning? |
| Investigator Burt: | Correct. |
| The State: | Did you advise them that a lawyer could be appointed to |

---

[1] We note that the trial court ruled the defense's motion to suppress would be "take[n] . . . up during the course of the proceedings." However, because all testimony was offered outside the presence of the jury during the suppression hearing, for purposes of clarity, we address the motion first. We then address all witness testimony that occurred in the presence of the jury.

|  |  |
|---|---|
|  | represent them if they couldn't afford one? |
| Investigator Burt: | That's correct. |
| The State: | And did you advise them they could stop answering questions at any time? |
| Investigator Burt: | Correct. |
| The State: | Did Ms. Rasbeery acknowledge she understood those rights? |
| Investigator Burt: | Correct. |
| The State: | Did she agree to speak? |
| Investigator Burt: | Correct. |
| The State: | In your opinion, did she, in fact, understand her rights? |
| Investigator Burt: | She did. |

¶10.    When asked whether he made any promises or threats towards Rasbeery before she made her statements or if she asked for a lawyer at any point, the investigator replied, "No." Investigator Burt further clarified on cross-examination that he Mirandized all four of the truck's occupants simultaneously because he "had the driver's attention at that time" since "Deputy Winstead was not speaking with the driver" in that moment. When asked how close Rasbeery was to the investigator at the time her warnings were issued, the investigator stated, "Approximately 5 feet -- 10 feet or less."

¶11.    Continuing with the suppression hearing, the State called Deputy Winstead next. Much of Deputy Winstead's testimony largely corroborated Investigator Burt's testimony.

5

On cross-examination, Deputy Winstead was asked whether Investigator Burt informed all four passengers of their rights or whether he only informed three. The deputy confirmed that he "could hear him . . . giving . . . *Miranda* to them" and that he also heard the passengers "acknowledging they understood." For purposes of the suppression hearing, the State rested.

*Defense Witness for Motion to Suppress*

¶12.    The defense then called Rasbeery to the stand. She testified that at no point during the checkpoint stop was she read her *Miranda* rights. Instead, Rasbeery disclosed that she was "in the [patrol] car when [the officer] did it." She further testified that Deputy Winstead questioned her about the gun "want[ing] to know why the gun was with the drugs," but reiterated that she was not advised of her *Miranda* rights before the deputy questioned her.

¶13.    During cross-examination, Rasbeery confirmed that she admitted to Investigator Burt that the purse found in the truck was hers. She further confirmed that the pistol found in the truck was hers, but she clarified that she "had purchased it through someone else." When shown a photograph of the weapon and asked whether it was the gun officers found in her purse, Rasbeery responded, "I cannot tell if that [was] the gun . . . because it's too blurry." She further explained that she has "MRSA in [her] eyes, which causes [her] to be blind." Nonetheless, she admitted to having a pistol in her purse but stated that "it was tan."

¶14.    Rasbeery also admitted to removing three pipes from her bra and giving them to the officers, but she testified that "[t]he three gentlemen in the truck . . . handed them to me and told me to please put them in my bra because I was a female and they could not search me."

6

When asked whether she was aware of the methamphetamine in her purse, Rasbeery denied that she was, alleging the men in the truck must have slipped it into her purse when the driver pulled off the road "because they told me to pay attention to what was in front of me and just sit there and shut up."

*Trial Court's Ruling on Motion to Suppress*

¶15.   After hearing testimony—"substantially similar in nature"—from the two officers on scene and Rasbeery, the trial court found that "very early on in the stop . . . the defendants were Mirandized, each within the hearing of the officer."  The trial court reiterated that "Deputy Winstead testified that he could hear . . . *Miranda* being given" and "he could hear the acknowledgment of the people there that they did acknowledge they understood their *Miranda* rights."  Ultimately finding that "the believability of the witnesses presented by the State is more . . . than that of the defendant," the trial court denied the defense's motion to suppress Rasbeery's roadside statements.

*The Trial*

¶16.   The State called four witnesses at trial: the two officers who conducted the safety checkpoint, the narcotics officer who interviewed Rasbeery, and the technical reviewer of the crystallized substance.  The jury heard from Investigator Burt first.  Much of his testimony focused largely on the safety checkpoint he and Deputy Winstead conducted "on Highway 492 and Road 701" and his subsequent interaction with Rasbeery.

¶17.   The investigator testified that during the stop, he "noticed [the] middle passenger, Ms.

7

Rasbeery, was extremely nervous." He observed, "Ms. Rasbeery . . . reaching on the hood" and "on the dashboard" and "under . . . the seat area between her and the passenger." Investigator Burt explained to the jury that not only was this "making [him] extremely nervous," but it led him to believe "something had to have been illegal in th[e] vehicle." After asking "everybody to step out of the vehicle" and obtaining consent from Sublette to search his truck, the investigator "took them to . . . the rear of the vehicle" and then he proceeded to "look[] around the vehicle."

¶18. During his search, he saw "a glass cylinder pipe" that was "sitting on the passenger floor board." When asked whether the purse was open or closed, the investigator responded that "the purse was sitting there open" and that he "could clearly see the pipe sitting there." Based on his experience, Investigator Burt recognized pipes are "commonly used to smoke methamphetamine." Directly underneath the pipe and inside the purse sat "a baggy," where the investigator observed "a crystallized substance" he "believed to be crystal methamphetamine." He disclosed that after he picked up the first baggy, he "noticed there [were] several other baggies" underneath. After preserving the evidence, Investigator Burt testified that he returned to the back of the truck where the occupants were and "read all four subjects their *Miranda* rights[.]"

¶19. Next, the jury heard from Deputy Winstead, who corroborated much of the investigator's testimony. The deputy testified that during his search of the vehicle, he "discovered a handgun in the purse that was [o]n the floorboard of the truck." Because "the

8

gun had been spray painted black and blue," Deputy Winstead disclosed that not only was he "unable to find a serial number," but he "was unable to get a make or model off of the gun." When the deputy confronted Rasbeery about who owned the gun, she "stated it was Mr. Chisolm's gun." However, she acknowledged that she owned the purse.

¶20. Josh Jolly, the narcotics investigator for the Neshoba County Sheriff's Department, testified for the State next. He testified that he interviewed Rasbeery twice the day following her arrest after she was re-informed of her rights. Investigator Jolly confirmed that Rasbeery "said she understood what her rights were and agreed to talk to [him]." She further "stated she did not want a lawyer at that time" and signed the department's *Miranda* form documenting her waiver.

¶21. During the first interview, Investigator Jolly disclosed that Rasbeery admitted "that the firearm was hers but stated that the methamphetamine was not." He told the jury that she claimed "if she did have meth on her, that she always keeps it inside a clear bag" with "green skulls on the baggy." Later that same day, Rasbeery was interviewed for a second time. Investigator Jolly testified that he advised her of her *Miranda* rights again, and again Rasbeery signed the department's *Miranda* form, acknowledging she understood and waived those rights. In her second interview, Rasbeery reiterated "that the firearm [was] hers and that she kept [it] for protection." But this time, she also admitted that she was aware she had methamphetamine in her purse, claiming one of the truck's passengers "brought her an ounce" and "was forcing her to help him sell the meth."

9

¶22. When asked to look at the twenty different baggies and whether any had particularly unique markings, Investigator Jolly acknowledged that there was "a clear ziploc baggy" with "green skulls on it that Ms. Rasbeery stated if something was hers, it would be in that type of bag." After being asked how many grams an ounce of meth contains, the investigator explained to the jury that "statute[-]wise, anything over 30 grams would be an ounce on the prosecuting side." But "28 grams," he noted, "would be a true ounce."

¶23. Lastly, the State called Charlotte Cothern, an employee at the Mississippi Forensics Laboratory in Batesville. The trial court accepted Cothern as an expert "[i]n the fields of forensic science and drug testing analysis." Cothern testified that "the gross weight" of all twenty baggies containing the substance was "28.16 grams." She further testified that forensic testing confirmed the crystallized substances contained within the baggies was methamphetamine.

¶24. After the State rested its case-in-chief, the defense moved for a directed verdict, arguing that the State failed to put on a prima facie case of possession of methamphetamine or the accompanying firearm enhancement. Specifically, the defense alleged that not only did the State fail to show that Rasbeery was in possession of "more than 10 grams or less than 30" grams of methamphetamine, but it could not "definitively show[] that" the firearm belonged to her. Finding that "the State has presented sufficient evidence that a reasonable juror could find the defendant guilty of the indicted charge," the trial court denied Rasbeery's motion.

¶25. Ultimately, the jury found Rasbeery guilty of possession of methamphetamine and the accompanying firearm enhancement. She was sentenced to 25 years in the custody of the Mississippi Department of Corrections, with 5 of those years suspended and 20 years to serve, followed by 5 years of post-release supervision. Rasbeery moved for a judgment notwithstanding the verdict or a new trial, which the trial court denied. Rasbeery appeals.

## DISCUSSION

¶26. On appeal, Rasbeery raises three assignments of error, including that there was insufficient evidence to support her conviction, that the verdict was against the overwhelming weight of the evidence, and that her motion to suppress certain statements was improperly denied. We address each issue in turn.

### I. There was sufficient evidence to support the conviction.

¶27. Rasbeery first argues that the State failed to meet "its high burden to prove beyond a reasonable doubt that [she] constructively possessed more than ten grams of methamphetamine." Specifically, she contends that because the "twenty baggies of methamphetamine at issue in this case were not found in [her] actual, physical possession," the "State was required to show that [she] exercised dominion and control over more than ten grams of methamphetamine."

¶28. "We review challenges to the sufficiency of the evidence de novo." *Gardner v. State*, 412 So. 3d 486, 497 (¶28) (Miss. Ct. App. 2024) (citing *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018)). "[W]e view the evidence in the light most favorable to the State

11

and decide if rational jurors could have found the State proved each element of the crime." *Id.* (quoting *Poole v. State*, 46 So. 3d 290, 293 (¶20) (Miss. 2010)). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole*, 46 So. 3d at 293-94 (¶20). "Rather, we must decide whether a reasonable juror could rationally say that the State did." *Id.* at 294 (¶20).

¶29.    Mississippi law makes it "unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice[.]" Miss. Code Ann. § 41-29-139(c) (Supp. 2022). "To establish possession of a controlled substance, the State must produce evidence that a defendant (1) was aware of the presence of a substance, (2) was aware of the character of the substance, and (3) was consciously and intentionally in possession of the substance." *Williams v. State*, 334 So. 3d 68, 73 (¶5) (Miss. 2022) (citing *Haynes v. State*, 250 So. 3d 1241, 1244-45 (¶8) (Miss. 2018)). Crucially, "[p]ossession can be actual or constructive." *Walker v. State*, 390 So. 3d 504, 509 (¶14) (Miss. 2024).

¶30.    Actual possession arises when "the drug is actually found on the defendant's person (i.e., in his hands, mouth, pockets, etc.)[.]" *Sills v. State*, 359 So. 3d 603, 610 (¶35) (Miss. 2023) (internal quotation marks omitted) (quoting *Glidden v. State*, 74 So. 3d 342, 348 (¶20) (Miss. 2011)). In contrast, "[c]onstructive possession exists where the contraband was not found in the defendant's actual physical possession but was 'subject to [the defendant's]

12

dominion or control.'" *Walker*, 390 So. 3d at 509 (¶14) (alteration in original) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971)); *see also Ferrell v. State*, 649 So. 2d 831, 834 (Miss. 1995) (holding a presumption of constructive possession arises "[w]hen the defendant owns or controls the premises where the contraband is found"). Therefore, "with constructive possession, the State has to prove the defendant was aware of the drug and intentionally, *but not necessarily physically*, in possession of it." *Gardner*, 412 So. 3d at 497-98 (¶29) (emphasis in original) (quoting *Sills*, 359 So. 3d at 610 (¶35)).

¶31. Investigator Burt and Deputy Winstead both testified Rasbeery admitted it was her purse that held the 20 baggies of methamphetamine. She also admitted the handgun belonged to her. The investigator also told the jury that Rasbeery was "frantically" reaching all over the front of the truck, including "under . . . the seat area between her and the passenger." Notably, that same purse was found shortly after by Investigator Burt "sitting on the passenger floor board" with a "glass cylinder pipe" inside of it.

¶32. Moreover, Investigator Jolly said Rasbeery specifically told him "she always keeps [her meth] inside a clear bag" marked with "green skulls on the baggy." One of the 20 bags in her purse matched this description. She also confessed that she was aware she had "an ounce" of methamphetamine in her purse. Lastly, forensic testing revealed that the crystallized substance found in the baggies was categorically methamphetamine.

¶33. Indeed, to establish possession, the State was required to produce evidence that Rasbeery (1) was aware of the presence of methamphetamine, (2) was aware of the character

13

of the methamphetamine, and (3) was consciously and intentionally in possession the methamphetamine. *Williams*, 334 So. 3d at 73 (¶5). Given these facts, a rational juror could find that Rasbeery constructively possessed methamphetamine. Therefore, we find the evidence was sufficient to prove each essential element of possession of methamphetamine beyond a reasonable doubt.

## II. The verdict was not against the overwhelming weight of the evidence.

¶34. Next, Rasbeery contends she is "entitled to a new trial because the jury's verdict was against the overwhelming weight of the evidence." Specifically, she argues that "the evidence presented by the State at [her] trial was sparse" highlighting the State's shortage in fingerprint testing, testimony from the other passengers in the truck, or any other evidence corroborating law enforcement's testimony.

¶35. "A challenge to the weight of the evidence addresses the trial judge's denial of a motion for a new trial, which we review only for an abuse of discretion." *Perkins v. State*, 392 So. 3d 690, 695 (¶7) (Miss. Ct. App. 2024) (citing *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017)). This Court's role is to "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little*, 233 So. 3d at 289 (¶1). Importantly, "[w]e do not reweigh evidence. We do not reassess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.*

¶36.   In light of the evidence discussed above, we cannot say that the jury's verdict was against the overwhelming weight of the evidence.  While Rasbeery now finds issue with the way the State presented its case-in-chief at trial, she raised none of those issues during trial, nor are any required for a conviction.  The jury was empowered to assess the credibility of each witness and resolve any potential conflicts between the evidence presented to them.  Accordingly, the trial court did not abuse its discretion by denying Rasbeery's motion for a new trial.

### III.      The motion to suppress was properly denied.

¶37.   Finally, Rasbeery argues that the trial court erred in denying her motion to suppress because "there was no way the court could determine beyond a reasonable doubt that [she] was informed of her rights before making her statements to the deputies at the traffic stop." Specifically, Rasbeery claims that "the trial court should have suppressed [her] statements that the purse and the gun found in the truck belonged to her" because "she was not informed of her *Miranda* rights until she was already in the patrol car and on the way to the jail."[2]

¶38.   "[D]etermining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." *Saddler v. State*, 297 So. 3d 234, 237 (¶6) (Miss. 2020) (quoting *Hunt v. State*, 687 So. 2d 1154, 1159 (Miss. 1996)).   During a suppression hearing, the judge "must consider the totality of the

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

15

circumstances to determine if a defendant intelligently, knowingly, and voluntarily waived his *Miranda* rights." *Gary v. State*, 237 So. 3d 140, 146 (¶29) (Miss. 2018) (internal quotation marks omitted) (quoting *Scott v. State*, 8 So. 3d 855, 862 (¶26) (Miss. 2008)). Notably, "[o]nce a trial judge determines admissibility, the defendant/appellant faces a heavy burden in trying to reverse on appeal." *Id.* (quoting *Ruffin v. State*, 992 So. 2d 1165, 1169 (¶8) (Miss. 2008)).

¶39.    "The prosecution has the burden of proving beyond a reasonable doubt that the confession was voluntary." *Jefferson v. State*, 214 So. 3d 1071, 1076 (¶12) (Miss. Ct. App. 2016) (quoting *Payton v. State*, 897 So. 2d 921, 935 (¶30) (Miss. 2003)). "Voluntariness may be established through testimony from officers or those who may have specific knowledge of the facts that the confession was made without any threats, offers of reward, or coercion." *Harden v. State*, 59 So. 3d 594, 605 (¶25) (Miss. 2011) (citing *Bell v. State*, 963 So. 2d 1124, 1134 (¶26) (Miss. 2007)).

¶40.    The trial court held a suppression hearing and heard testimony from Investigator Burt, Deputy Winstead, and Rasbeery. Despite Rasbeery's claims that she did not receive *Miranda* warnings before speaking with law enforcement, Investigator Burt testified he ensured he had her attention before he began issuing her rights. He further testified that Rasbeery verbally acknowledged that she understood those rights, but chose to speak with him anyway. He disclosed that at no point during their interactions did she ever ask for a lawyer or communicate that she did not wish to speak with him any longer. When he issued Rasbeery

16

her *Miranda* rights, the two were within 5 to 10 feet of one another, or less. Investigator Burt denied ever threatening her or making her any promises.

¶41.  Deputy Winstead testified that not only could he hear the investigator issuing Rasbeery her *Miranda* rights, but that he could hear Rasbeery acknowledge that she understood those rights.

¶42.  After finding both officers' testimony to be "substantially similar in nature," the trial court found that "the believability of the witnesses presented by the State is more . . . than that of the defendant," and the trial court denied the defense's motion to suppress Rasbeery's roadside statements.

¶43.  As such, we find there is substantial credible evidence in the record to support the trial court's denial of the motion to suppress. Therefore, we find the statements were properly admitted.

## CONCLUSION

¶44.  For the above stated reasons, Rasbeery's conviction and sentence are affirmed.

¶45.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

17